SCOTT N. SCHOOLS (SCSBN 9990)
United States Attorney
THOMAS MOORE (ASBN 4305-O78T)
Assistant United States Attorney
Chief, Tax Division
THOMAS M. NEWMAN (CTBN 422187)
Assistant United States Attorney
9th Floor Federal Building
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-6805
Fax: (415) 436-6748

Attorneys for the United States of America

FILED

E-filing

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

**BZ**

**WACHOVIA BANK, N.A. AS TRUSTEE (BAYVIEW), a national banking association**

**Plaintiff,**

**v.**

**JOHN CLIFTON ELSTEAD, an individual; SANDRA F. ELSTEAD, also known as SANDRA F. WAGNER, an individua; ; TITLE INSURANCE AND TRUST COMPANY, a California corporation; FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation; SUSAN ELSTEAD, an individual; LAW OFFICES OF WALKER & DURHAM, an entity of unknown form; THE UNITED STATES OF AMERICA; MBNA AMERICA BANK, N.A., a national banking entity; MEUSER COLLECTION COMPANY doing business as MEUSER OF CALIFORNIA, a California corporation; UNIVERSAL FENCES & SUPPLY, INC., a California corporation; THE CITY OF OAKLAND, a municipal entity; DOES 1 through 100, inclusive,**

**Defendants.**

**Case No.:** CV 07 6015

**PETITION FOR REMOVAL OF CIVIL ACTION**

Pursuant to 28 U.S.C. §§ 1441, et seq., the undersigned hereby presents the following facts to the Judges of the United States District Court for the Northern District of California on behalf of the United States of America.



1. A First Amended Complaint For Judicial Foreclosure was filed on September 27, 2007, in the Superior Court of the State of California in and for the County of Alameda, numbered RG07346492 and bearing the above caption.

2. A copy of the above mentioned Amended Complaint was received in the Office of the United States Attorney for the Northern District of California on November 26, 2007 marked as Exhibit A to this Petition.

3. The aforesaid Amended Complaint is one which may properly be removed to this Court pursuant to 28 U.S.C. §§ 1442(a)(1) and 1444 of Title 28, United States Code, which provide, in pertinent part:

> **§ 1442**
>
> **"(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:**
>
> > **(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue."**
>
> **§ 1444**
>
> Any action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending.

4. This petition is filed within the time prescribed by § 1446(b) of Title 28 United States Code.

///

///

///

///

**WHEREFORE**, the undersigned petitions this Court on behalf of the United States, that the Amended Complaint described in paragraph 1 above be removed to this Court for all further proceedings.

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

THOMAS M. NEWMAN
Assistant United States Attorney
Tax Division

Pet. For Removal Of
Civil Action 3

2007 SEP 27 2:40

JOHN M. SORICH (CA Bar No. 125223)
jsorich@adorno.com
S. CHRISTOPHER YOO (CA Bar No. 169442)
cyoo@adorno.com
ROCIO HERRERA (CA Bar No. 237139)
rherrera@adorno.com
ADORNO YOSS ALVARADO & SMITH
A Professional Corporation
1 MacArthur Place, Suite 200
Santa Ana, California 92707
Tel: (714) 852-6800
Fax: (714) 852-6899

Attorneys for plaintiff
WACHOVIA BANK, N.A. AS TRUSTEE (BAYVIEW)

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

WACHOVIA BANK, N.A. AS TRUSTEE (BAYVIEW), a national banking association

Plaintiff,

v.

JOHN CLIFTON ELSTEAD, an individual; SANDRA F. ELSTEAD, also known as SANDRA F. WAGNER, an individual; TITLE INSURANCE AND TRUST COMPANY, a California corporation; FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation; SUSAN ELSTEAD, an individual; LAW OFFICES OF WALKER & DURHAM, an entity of unknown form; THE UNITED STATES OF AMERICA; MBNA AMERICA BANK, N.A., a national banking entity; MEUSER COLLECTION COMPANY doing business as MEUSER OF CALIFORNIA, a California corporation; UNIVERSAL FENCES & SUPPLY, INC., a California corporation; THE CITY OF OAKLAND, a municipal entity; DOES 1 through 100, inclusive,

Defendant.

**CASE NO.:** RG07346492

**FIRST AMENDED COMPLAINT FOR JUDICIAL FORECLOSURE**

Plaintiff Wachovia Bank, N.A. as Trustee (Bayview) ("Plaintiff" or Wachovia") alleges as follows:

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

## THE PARTIES

1. At all times herein mentioned, Wachovia was and is, a national banking association authorized to do business and doing business in the State of California.

2. Wachovia is informed and believes that, at all times herein mentioned, defendant John Clifton Elstead ("Mr. Elstead" or "Borrower") is an individual residing in the County of Alameda, State of California.

3. Wachovia is informed and believes that, at all times herein mentioned, defendant Sandra F. Elstead also known as Sandra F. Wagner ("Sandra") is an individual residing in the City of Walnut Creek, County of Concord, State of California. Sandra has, or claims to have, a beneficial interest in a deed of trust ("Sandra Elstead Deed of Trust") which was executed by Mr. Elstead in favor of "Sandra F. Elstead" and recorded with the Alameda County Recorder's Office on October 31, 1988 as instrument number 88-276685. Wachovia alleges on information and belief that the Sandra Elstead Deed of Trust secures an original indebtedness of $40,000 and encumbers the property located at 7460 Woodrow Drive, Oakland, California 94611 ("Subject Property"). Additionally, Sandra has, or claims to have, a beneficial interest in a deed of trust ("Sandra Wagner Deed of Trust") which was executed by Mr. Elstead in favor of "Sandra F. Wagner" and recorded with the Alameda County Recorder's Office on May 24, 1994 as instrument number 94196619. Wachovia alleges on information and belief that the Sandra Wagner Deed of Trust secures an original indebtedness of $60,000 and encumbers the Subject Property.

4. Wachovia is informed and believes that defendant Title Insurance and Trust Company ("Title Insurance"), a California corporation, is now and at all times mentioned was doing business in the County of Alameda, State of California. Title Insurance is identified as the trustee for the Sandra Elstead Deed of Trust.

5. Wachovia is informed and believes that defendant Fidelity National Title Insurance Company ("Fidelity"), a California corporation, is now and at all times mentioned was, doing business in the County of Alameda, State of California. Fidelity is identified as the trustee for the Sandra Wagner Deed of Trust.

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

6. Wachovia is informed and believes that defendant Susan Elstead is an individual residing in the County of Marin, State of California, and that she has, or claims to have, a monetary judgment from the Superior Court of California, County of Marin, Case No. 161111, for child, family or spousal support. Wachovia is informed and believes that this monetary judgment was recorded with the Alameda Recorder's Office on May 31, 1995 as instrument number 95119738. Wachovia alleges on information and belief that this monetary judgment may encumber the Subject Property.

7. Wachovia is informed and believes that defendant Law Offices of Walker & Durham, et al ("Walker Firm") an entity of unknown form, has, or claims to have, a monetary judgment in the amount of $11,532.64 from the Superior Court of California, County of Alameda, Case No. 738956-0. Wachovia is informed and believes that this monetary judgment is reflected by an abstract of judgment recorded with the Alameda Recorder's Office on April 23, 1999 as instrument number 99164437. Wachovia is informed and believes that this abstract of judgment may encumber the Subject Property.

8. Wachovia is informed and believes that defendant the United States of America ("USA") has or claims to have a federal tax lien against Mr. Elstead in the amount of $287,246.26, which was recorded with the Alameda County Recorder's Office on September 12, 2002 as instrument number 2002406944. Wachovia is informed and believes that this federal tax lien may encumber the Subject Property.

9. Wachovia is informed and believes that defendant MBNA America Bank, N.A. ("MBNA") is now, and at all times herein mentioned was, national banking association, doing business in the State of California. MBNA has, or claims to have, a monetary judgment in the amount of $44,497.61 from the Superior Court of California, County of Alameda, Case No. 772694-5. Wachovia is informed and believes that this monetary judgment is reflected by an abstract of judgment recorded on September 3, 2004 as Instrument No. 2004402755. Wachovia is informed and believes that this abstract of judgment may encumber the Subject Property.

10. Wachovia is informed and believes that defendant Meuser Collection Company doing business as Meuser of California ("Meuser"), a California corporation, is now, and at all times herein

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

mentioned was, a California corporation, doing business in the County of Alameda, State of California. Meuser has, or claims to have, a monetary a judgment in the sum of $1,304.72 from the Superior Court of California, County of Alameda, Case No. WG03104164. Wachovia is informed and believes that this monetary judgment is reflected by an abstract of judgment recorded on November 10, 2004 as Instrument No. 20044504614. Wachovia is informed and believes that this abstract of judgment may encumber the Subject Property.

11. Wachovia is informed and believes that defendant Universal Fences & Supply, Inc. ("Universal") is now, and at all times herein mentioned was, a California corporation, doing business in the State of California. Universal has, or claims to have, a lien against the Subject Property, which was recorded with the Alameda County Recorder's Office on April 9, 2007 as Instrument No. 2007136688 in the amount of $1,504.40.

12. Wachovia is informed and believes that defendant City of Oakland ("City") is now, and at all times herein mentioned was a municipal entity. The City has, or claims to have, a lien for refuse collection charges, which was recorded with the Alameda County Recorder's Office on April 18, 2007 as Instrument No. 2007153884 in the amount of $304.31.

13. The Subject Property is located in the County of Alameda, State of California.

14. The true names and capacities of defendants sued herein as Does 1 through 100, inclusive, are unknown to Wachovia, who therefore sues those defendants by such fictitious names pursuant to Code of Civil Procedure Section 474. Any reference in this Complaint to the actions or in actions of any defendant, whether the reference is made to such defendant by specific name or otherwise, is also a reference to the actions or in actions of Does 1 through 100, inclusive. Wachovia will seek leave to amend this Complaint to set forth their true names and capacities when they have been ascertained.

15. Wachovia is informed and believes, and on that basis allege, that at all times herein mentioned defendants, and each of them, were the agents, employees, representatives, partners, and related or affiliated entities of their co-defendants, and in doing the things hereinafter mentioned, were acting in the course and scope of their agency and employment with the permission, consent, authority and ratification of their co-defendants.

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

## GENERAL ALLEGATIONS

16. The Subject Property is legally described as follows:

"PARCEL I

PARCEL B, PARCEL MAP 2215, FILED OCTOBER 12, 1977, PARCEL MAPS, BOOK 93, PAGE 20, ALAMEDA COUNTY RECORDS.

PARCEL II:

THAT CERTAIN EASEMENT SET FORTH IN THAT CERTAIN DOCUMENT RECORDED MARCH 19, 1979 AS INSTRUMENT NO. 7-050074 UPON THE TERMS AND CONDITIONS THEREIN SET FORTH, ALL OF WHICH ARE INCORPORATED HEREIN BY REFERENCE THERETO."

17. On or about October 19, 1988, Sutter Mortgage Corporation ("Sutter"), Wachovia's predecessor, and Mr. Elstead entered into a written Deed of Trust Note ("Note") pursuant to which Sutter lent to Mr. Elstead the sum of Four Hundred and Twenty-Nine Thousand Six Hundred U.S. Dollars ($429,600.00) (the "Loan"). A true and correct copy of the Note is attached hereto as Exhibit "1" and is incorporated herein by this reference.

18. The terms of the Note required Mr. Elstead to make monthly payments of principal and interest beginning on the first day of each month. The initial monthly payment due under the Note was $3,077.71. Mr. Elstead was to make the first monthly payment or about December 1, 1988, and was to continue making monthly payments on the first of every month thereafter, until November 1, 2018, at which time all amounts due under the Note shall be due and payable.

19. On or about October 19, 1988, as security for repayment of the Loan obligation reflected by the Note and as part of the same loan transaction, Mr. Elstead made, executed and delivered to Sutter a Deed of Trust ("Deed of Trust") encumbering the Subject Property. The Deed of Trust was recorded with the Alameda County Recorder's Office on October 26, 1988, as Instrument No. 88-271114. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "2" and is incorporated herein by this reference.

20. The consideration for the Note and Deed of Trust was adequate, and the terms of said Note and Deed of Trust are and were just and reasonable.

21. Wachovia is informed and believes that the Deed of Trust was assigned to Florida Federal Savings and Loan Association, and the assignment was reflected by a Corporation Assignment of Deed of Trust recorded with the Alameda County Recorder's Office on October 26, 1998 as instrument number 88-271115 and re-recorded December 19, 1998 as instrument number 88-321660.

22. On or about July 12, 2004, the Deed of Trust was assigned to Wachovia, and the assignment is reflected by an Assignment of Deed of Trust. A true and correct copy of the Assignment of the Deed of Trust executed in favor of Wachovia is attached hereto as Exhibit "3" and is incorporated herein by this reference.

23. On or about March 16, 1995, Chase Manhattan Mortgage Corporation assumed the servicing of the Loan and notified Mr. Elstead that all future payments should be made and sent to Chase. Chase Home Finance LLC ("Chase"), a Delaware limited liability company, is the successor by merger to Chase Manhattan Mortgage Corporation and the current servicer of the Loan.

24. On or about April 17, 1995, upon assumption of the loan servicing, Chase Manhattan Mortgage Corporation notified Mr. Elstead that he was in default under the Loan.

25. Chase Manhattan Mortgage Corporation postponed the proposed foreclosure sale when Mr. Elstead and Chase Manhattan Mortgage Corporation entered into a Forebearance Agreement ("Forebearance Agreement"). The terms of the Forebearance Agreement required that Mr. Elstead pay to Chase the sum of $76,210.78 in eight monthly installments concluding on December 1, 1995. A true and correct copy the Forebearance Agreement is attached hereto as Exhibit "4" and incorporated herein by this reference.

26. Mr. Elstead failed to comply with terms of the Forebearance Agreement and by March 19, 1996 had arrears of $20,370.05. By January 1, 1997, Mr. Elstead was $54,096.17 in arrears.

27. Thereafter, Mr. Elstead filed a Complaint for Damages in the Superior Court of the State of California, County of Alameda, entitled *Elstead v. Chase Manhattan Bank, et al.*, Alameda County Superior Court, Case No. 787345-2 in which Mr. Elstead alleged that Chase mismanaged and over-billed the Loan account ("1997 Complaint")

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

28. The 1997 Complaint was voluntarily dismissed, with prejudice and Mr. Elstead and Chase Manhattan Mortgage Corporation entered into an Amended and Restated Settlement Agreement and Release ("Resolution Agreement") on January 23, 1998.

29. Pursuant to the terms of the Resolution Agreement, Mr. Elstead agreed to make payments totaling $48,563.21 in equal installments over a period of thirty-six (36) months thereafter. This was in addition to Mr. Elstead's original obligations under the Loan. A true and correct copy the Resolution Agreement is attached hereto as Exhibit "5" and incorporated herein by this reference.

30. Mr. Elstead failed to comply with the terms of the Resolution Agreement and by March 9, 2002 owed at least $94,570.79 in arrears.

31. Instead of paying the outstanding arrears, Mr. Elstead filed a second lawsuit against Chase Manhattan Mortgage Corporation and others on April 4, 2002, styled *Elstead v. JP Morgan Chase Bank, et al.*, Alameda County Superior Court, Case No. 02-046192 ("2002 Lawsuit") in which Mr. Elstead challenged Chase's rights to foreclose and again alleged that Chase mismanaged and over-billed his Loan account. Chase filed a motion for summary judgment which was granted on December 1, 2006.

32. Mr. Elstead has made no payment to Chase since February 2002, and the Loan is due for August 2000. Failure to make payments when due is defined as an event of default under the Note and constitutes a breach of the Note and the Deed of Trust.

33. Wachovia alleges, on information and belief, that Mr. Elstead will also fail to make any future payments required by the terms of the Note, Deed of Trust, and the Resolution Agreement.

**FIRST CAUSE OF ACTION**

**(Judicial Foreclosure Against All Defendants)**

34. Wachovia hereby realleges and incorporates herein by reference paragraphs 1 through 33 of this Complaint as though set forth in full.

35. Failure to make any payment when due is defined as an event of default under the Note and constitutes a breach of the Note and Deed of Trust. Upon a breach of the Note and Deed of

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

Trust, Wachovia has the right to declare all sums secured thereby to be immediately due and payable.

36. In accordance with the terms of the Note and Deed of Trust, Wachovia has declared all sums secured by the Deed of Trust to be immediately due, owing, and payable.

37. The terms of the Note and Deed of Trust provide that in the event that Mr. Elstead fails to timely make the monthly loan payment, Mr. Elstead is obligated to pay a late charge for each untimely payment. Additionally, the Note and the Deed of Trust provide that Mr. Elstead is obligated to pay all costs, and reasonable attorneys' fees incurred by Wachovia to enforce and/or protect its rights under the Note and Deed of Trust.

38. As of September 15, 2007, the following sums are due and payable to Wachovia by Mr. Elstead:

(a) Unpaid principal in the sum of $ 362,062.28;

(b) Accrued interest from July 1, 2000 through August 31, 2007, in the amount of at least $154,065.00;

(c) Late charges in the sum of at least $14,332.80;

(d) Attorneys' fees incurred to protect Wachovia's security in the 2002 Lawsuit, including, but not limited to such sums authorized by the Court in the 2002 Lawsuit, according to proof;

(e) Costs and reasonable attorneys' fees incurred in this action according to proof; and

(f) Such amounts as Wachovia advances, if any, to or for the benefit of Mr. Elstead.

39. Failure to perform as obligated under the Note and Deed of Trust is defined as an event of default under the Deed of Trust and constitutes a breach of the Deed of Trust. Upon a breach of the Note and/or Deed of Trust, Wachovia has the right to declare all sums secured thereby to be immediately due and payable.

40. Wachovia has duly performed all of the conditions precedent on its part required to be performed.

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

41. By this action, Wachovia seeks a judgment of foreclosure upon the collateral described in the Deed of Trust which will authorize the sale of the Subject Property by and under the laws of the State of California, with the proceeds of the sale to be applied to the obligation owed by Mr. Elstead to Wachovia.

42. Under the provisions of the Note and the Deed of Trust, Mr. Elstead further agreed that if Wachovia had to pursue any of its rights and remedies upon the default of Mr. Elstead, including foreclosure, Mr. Elstead would pay all costs and expenses incurred by Wachovia, including attorneys' fees. Because of the default by Mr. Elstead, it has become necessary for Wachovia to employ attorneys licensed to practice in California to commence and prosecute this action.

**WHEREFORE**, Wachovia prays for judgment as follows:

1. For judgment against Mr. Elstead as follows:

   (a) Unpaid principal in the amount of $362,062.28;

   (b) Unpaid, accrued interest in an amount according to proof;

   (c) Late charges, according to proof;

   (d) Attorneys' fees incurred to protect Wachovia's security in the 2002 Lawsuit, including, but not limited to such sums authorized by the Court in the 2002 Lawsuit, according to proof;

   (e) Costs, and reasonable attorneys' fees according to proof; and

   (f) Such other amounts as Wachovia advances, if any, to or for the benefit of defendants, and each of them, according to proof;

2. For judgment that the Deed of Trust be foreclosed and that the usual judgment according to the law be made for the sale of the Subject Property by the sheriff of the county in which the Subject Property is located, or by a commissioner to be appointed by the Court;

3. For judgment that the proceeds of sale be applied in payment of the indebtedness owed to Wachovia under the Loan;

4. For judgment that the defendants, and each of them, and all persons claiming under any of them, subsequent to the execution of the Deed of Trust, whether as lien claimants, judgment

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

creditors, claimants under a junior deed of trust, purchasers, encumbrances or otherwise, be barred and foreclosed from all rights, claims, interests, or equity, of redemption in the Subject Property when the time for redemption has expired;

5. For judgment that Wachovia be permitted to become a purchaser at the foreclosure sale;

6. For an order that when the time for redemption has expired, the sheriff or commissioner shall execute a deed to the purchaser of the Subject Property at the sale; and that the purchaser shall be let into possession of the Subject Property upon production of the sheriffs or commissioner's deed;

7. For all costs and reasonable attorneys' fees incurred in the enforcement of the obligation and the protection of Wachovia's interest in the Deed of Trust according to proof;

8. For interest at the highest legal rate; and

9. For such other and further relief the court deems just and proper.

DATED: September 27, 2007

ADORNO YOSS ALVARADO & SMITH
A Professional Corporation

By: [signature]
JOHN M. SORICH
S. CHRISTOPHER YOO
ROCIO HERRERA
Attorneys for plaintiff
WACHOVIA BANK, N.A. AS TRUSTEE (BAYVIEW)

# EXHIBIT 1



# ADJUSTABLE RATE NOTE
(RATE CAPS)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

0 0 3 5 6 1 0 0 1 1

WALNUT CREEK (City) CALIFORNIA (State)

OCTOBER 19, 1988

7460 WOODROW DRIVE, OAKLAND, CA 94611 (Property Address)

1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 429,600.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is SUTTER MORTGAGE CORPORATION, A CALIFORNIA CORPORATION.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 7.75%. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7 (B) of this Note.

3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on DECEMBER 1, 19 88. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on NOVEMBER 1, 2018 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 710 S. BROADWAY, SUITE 203, WALNUT CREEK, CA. 94596, or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $3,077.71. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of NOVEMBER, 19 89, and on that day every 12TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

BEGINNING WITH THE FIRST CHANGE DATE, MY INTEREST RATE WILL BE BASED ON AN INDEX. THE 'INDEX' IS THE MONTHLY WEIGHTED AVERAGE COST OF SAVINGS, BORROWINGS AND ADVANCES OF MEMBERS OF THE FEDERAL HOME LOAN BANK OF SAN FRANCISCO (THE 'BANK'), AS MADE AVAILABLE BY THE BANK.

THE MOST RECENT INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE 'CURRENT INDEX.'

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding 2.50 percentage points (2.50%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 9.75% or less than 5.75%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than 2.00 from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 13.375 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

000644

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

6. LOAN CHARGES.

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Witness the hand(s) and seal(s) of the undersigned.

[signature] (Seal) Borrower
JOHN CLIFTON ELSTEAD

_______________ (Seal) Borrower

_______________ (Seal) Borrower

000645

_______________ (Seal) Borrower

(Sign Original Only)

CHASE 00643

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers, without recourse, all of its right, title and interest in this instrument and in all other instruments, agreements and collateral in connection therewith to

6 1 0 0 1 1 1

FLORIDA FEDERAL SAVINGS AND LOAN ASSOCIATION

By: SUTTER MORTGAGE CORPORATION
Name of Seller - Endorser

[signature]
Authorized Signature

LYNNE M. DOWNING VICE President
Print Name, Title of Signator

000646

# ADJUSTABLE RATE RIDER

(Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 19TH day of OCTOBER , 1988 is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to SUTTER MORTGAGE CORPORATION, A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

7460 WOODROW DRIVE, OAKLAND, CA 94611

(Property Address)

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 7.75 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of NOVEMBER , 1989 and on that day every 12TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

BEGINNING WITH THE FIRST CHANGE DATE, MY INTEREST RATE WILL BE BASED ON AN INDEX. THE 'INDEX' IS THE MONTHLY WEIGHTED AVERAGE COST OF SAVINGS, BORROWINGS AND ADVANCES OF MEMBERS OF THE FEDERAL HOME LOAN BANK OF SAN FRANCISCO (THE 'BANK'), AS MADE AVAILABLE BY THE BANK. THE MOST RECENT INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE 'CURRENT INDEX.'

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding 2.50 percentage points ( 2.50 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 9.75 % or less than 5.75 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than 2.00 from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 13.375 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment OR BE LESS THAN 2.50% beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

000643

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

[signature] (Seal) Borrower
JOHN CLIFTON ELSTEAD

_______________ (Seal) Borrower

_______________ (Seal) Borrower

_______________ (Seal) Borrower

We hereby certify this to be a true and exact copy of the original document.
NORTHWESTERN TITLE COMPANY OF ALAMEDA COUNTY
By [signature]

MULTISTATE ADJUSTABLE RATE RIDER

CHASE 00641

EXHIBIT 2

WHEN RECORDED MAIL TO

SUTTER MORTGAGE CORPORATION
710 S. BROADWAY, SUITE 203
WALNUT CREEK, CA. 94596

45008285

Escrow No: 714082-JO

RECORDED at REQUEST OF Northwestern Title Co. At 8:30 A.M.

OCT 26 1988

ALAMEDA COUNTY CALIFORNIA
RENE C. DAVIDSON
COUNTY RECORDER

88-271114

8285

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on OCTOBER 19, 19 88. The trustor is JOHN CLIFTON ELSTEAD, AN UNMARRIED MAN ("Borrower").

The trustee is SUTTER MORTGAGE CORPORATION, A CALIFORNIA CORPORATION ("Trustee").

The beneficiary is SUTTER MORTGAGE CORPORATION, A CALIFORNIA CORPORATION which is organized and existing under the laws of CALIFORNIA, and whose address is 710 S. BROADWAY, SUITE 203, WALNUT CREEK, CA. 94596 ("Lender").

Borrower owes Lender the principal sum of FOUR HUNDRED TWENTY NINE THOUSAND SIX HUNDRED AND NO/100--- Dollars (U.S. $ 429,600.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on NOVEMBER 1, 2018. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in ~~XXXXXXXXXX~~ ALAMEDA County, California:

PARCEL I

PARCEL B, PARCEL MAP 2215, FILED OCTOBER 12, 1977, PARCEL MAPS, BOOK 93, PAGE 20, ALAMEDA COUNTY RECORDS.

PARCEL II:

THAT certain easement set forth in that certain document recorded March 19, 1979 as Instrument No. 79-050074 upon the terms and conditions therein set forth, all of which are incorporated herein by referrence thereto.

Commonly known as: 7460 Woodrow Drive
Alameda County Account No. 48E-7327-40

JCE

RECEIVED
DEC 20 1988
LOAN AUDIT

000747

which has the address of 7460 WOODROW DRIVE (Street) OAKLAND (City), California 94611 (Zip Code) ("Property Address");

CHASE 00746

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

86-271114

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. A charge assessed by Lender in connection with Borrower's entering into this Security Instrument to pay the cost of an independent tax reporting service shall not be a charge for purposes of the preceding sentence. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 should be applied: first to amounts payable under paragraph 2; second to interest; and last to principal.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

000748

88-271114

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**8. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**13. Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 17.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable , such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraphs 13 or 17.

CHASE 00748

000749

86-271114

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**20. Lender in Possession.** Upon acceleration under paragraph 19 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

**21. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**22. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**23. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**24. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California ($30.00).

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☒ Adjustable Rate Rider ☐ Condominium Rider ☐ 1-4 Family Rider
☐ Graduated Payment Rider ☐ Planned Unit Development Rider
☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

John Clifton Elstead
JOHN CLIFTON ELSTEAD —Borrower ______ —Borrower

______ —Borrower ______ —Borrower

[Space Below This Line Reserved For Acknowledgment]

State of California, Alameda County ss:

On this 21st day of October, 19 86, before me, the undersigned, a Notary Public in and for said State, personally appeared JOHN CLIFTON ELSTEAD

known to me, or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) IS subscribed to the foregoing instrument and acknowledged that HE/SHEX executed the same.

Witness my hand and official seal.

Signature J Valenza

Jo Valenza
(Name typed or printed)

(Reserved for official seal)
OFFICIAL SEAL
JO VALENZA
NOTARY PUBLIC-CALIFORNIA
COUNTY OF ALAMEDA
My Commission Expires Oct. 27, 1990

My commission expires: October 27, 1990

000750

REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ______ ______

EXHIBIT 3

2004317045 07/12/2004 02:27 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE: 12.00

2 PGS

RECORDING REQUESTED BY:
**AND MAIL TO**

Record and Return to:
Jennifer McGovern
InterBay Funding, LLC
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, Florida 33146

Loan #: 854981

FN
JM

# ASSIGNMENT OF DEED OF TRUST

This ASSIGNMENT OF DEED OF TRUST is made as of 2/26/2003 by **Deutsche Bank National Trust Company as trustee, f.k.a. Bankers Trust Company of California, N.A. as trustee, successor trustee by operation of law to Bank of America NT&SA, successor by merger to Security Pacific National Bank as trustee**, (The "Assignor"), whose mail address is **1761 East St. Andrew Place, Santa Ana, CA 92705** to:

Wachovia Bank N.A. As Trustee (Bayview), (The "Assignee"),
whose mailing address is:
7801 Bayberry Rd., Jacksonville, FL 32256

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, assign, transfer and set over unto the Assignee, its successors, transferees, and assigns forever, all of the rights, title and interest of said Assignor, if any, in and to the following deed of trust describing lands therein, duly recorded in the office of the county recorder of Alameda County, State of CA, as follows:

| Deed of Trust dated: 10/19/88<br>Legal Description: See Exhibit "A" Attached | BORROWER(S):<br>John Clifton Elstead, An Unmarried man | Recording Date: 10/28/88<br>Book: —<br>Page: —<br>Inst/Doc#: 88-271114 |
|---|---|---|
| Trustee: Sutter Mortgage Corporation | Beneficiary: Sutter Mortgage Corporation | |
| Property Address: 7460 WOODROW DR ; OAKLAND | CA 94611 | |

Together with Assignor's interest in any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney's fees and all other charges due in connection therewith.

**Deutsche Bank National Trust Company as trustee, f.k.a. Bankers Trust Company of California, N.A. as trustee, successor trustee by operation of law to Bank of America NT&SA, successor by merger to Security Pacific National Bank as trustee**

Attest:
By: ______________________
Name: Ronaldo Rayes
Title: Associate

By: ______________________
Name: David Co
Title: Vice President

Witness By: ______________________
Name: Tim Avakian

State of California )
) SS:
County of Orange )

On 2/26/2003, before me, Peter Quoc Tran, a Notary Public for the aforesaid state and county, personally appeared David Co, Vice President, of Deutsche Bank National Trust Company as trustee, f.k.a. Bankers Trust Company of California, N.A. as trustee, successor trustee by operation of law to Bank of America NT&SA, successor by merger to Security Pacific National Bank as trustee, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that (s)he executed the same in his/her authorized capacity and that by his/her signature on the instrument, the person or the entity on behalf of which the person acted, executed the instrument.

Witness my hand and official seal: Peter Quoc Tran, Notary Public, By: ______________________
State of CA, Orange County, Commission Expires: 12/24/05

00355107264

Prepared By: Lorene Molina
BayView Financial Trading Group, LP
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, Florida 33146

PETER QUOC TRAN
COMM. # 1338288
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Expires Dec. 24, 2005
HRS2 RRS2

Loan #: 254981

**EXHIBIT "A"**

Legal **Description:**

PARCEL I:
PARCEL B, PARCEL MAP 2215, FILED OCTOBER 12. 1977, PARCEL MAPS, BOOK 93, PAGE 20, ALAMEDA COUNTY RECORDS.

PARCEL II:

THAT CERTAIN EASEMENT SET FORTH IN THAT CERTAIN DOCUMENT RECORDED MARCH 19, 1979 AS INSTRUMENT NO. 79-050074 UPON THE TERMS AND CONDITIONS THEREIN SET FORTH, ALL OF WHICH ARE INCORPORATED HEREIN BY REFERENCE THERETO.

COMMONLY KNOWN AS: 7460 WOODROW DRIVE
ALAMEDA COUNTY ACCOUNT NO. 488-7327-40

**EXHIBIT 4**

TTD NO. 20272-2 LOAN NO. 0011354003

FOREBEARANCE AGREEMENT

This agreement entered into the 8th day of May, 1995, between John Clifton Elstead, hereafter called (trustors) and Chase Manhattan Mortgage Corp, servicing agent for Bankers Trust Company, hereafter called (lender), affecting property commonly known as 7460 Woodrow Drive, Oakland Ca 94611, agree to the following forebearance agreement.

1. Trustor shall tender the sum of $32,295.30, in the form of a cashier's check or wired funds to Title Trust Deed Service Company, on or before Tuesday, May 9, 1995. After verification that the payment is received the foreclosure sale will be postponed to June 2, 1995.

2. Trustor shall tender the [illegible] which is comprised of one monthly [illegible] $2,804.68 and partial payment of taxes in [illegible] amount of $3,166.96. This payment shall be made [illegible] than the 1st day of June, 1995 in the form of a cashier's check payable to Title Trust Deed Service Company. After verification that payment is received the foreclosure sale will be postponed to July 5, 1995.

3. Trustor shall tender payments in the amount of $6,273.64 by the 1st day of July, 1995 in the form of a cashier's check payable to Title Trust Deed Service Company. After verification that payment is received the foreclosure sale will be postponed to August 2, 1995

4. Trustor shall tender payments in the amount of $6,273.64 by the 1st day of August, 1995 in the form of a cashier's check payable to Title Trust Deed Service Company. After verification that payment is received the foreclosure sale will be postponed to September 5, 1995.

5. Trustor shall tender payments in the amount of $6,273.64 by the 1st day of September, 1995 in the form of a cashier's check payable to Title Trust Deed Service Company. After verification that payment is received the foreclosure sale will be postponed to October 4, 1995.

6. Trustor shall tender payments in the amount of $6,273.64 by the 1st day of October, 1995 in the form of a cashier's check payable to Title Trust Deed Service Company. After verification that payment is received the foreclosure sale will be postponed to November 8, 1995.

7. Trustor shall tender payments in the amount of $6,273.64 by the 1st day of November, 1995 in the form of a cashier's check

16633 Ventura Boulevard • Suite 1000 • Encino, California 91436
Fax (818) 905-6209 • Toll Free Nationwide (800) 874-9602 • In California (800) 874-9603 • (818) 986-8065

TTD NO. 20272-2
LOAN NO. 0011354003

payable to Title Trust Deed Service Company. After verification that payment is received the foreclosure sale will be postponed to December 6, 1995.

8. Trustor shall tender payments in the amount of $6,273.64 by the 1st day of December, 1995 in the form of a cashier's check payable to Title Trust Deed Service Company. THis will be the balance due to bring loan current including foreclosure fees and expenses.

9. The next payment due upon completing the above items will be January 1, 1996.

The parties hereto agree that the above postponements as they occur shall be considered Mutual Agreement postponements under California Civil Code Section 2924g(2).

The undersigned trustor(s) who are parties to this agreement hereby acknowledge that they understand and agree that any and all monies that are tendered to Chase Manhattan Mortgage Corp. shall not be construed as curing or waiving any default which now exists until such time as all defaults are cured in accordance with the above stated forebearance agreement. Furthermore, the trustors understand and agree that in the event that trustors breach in any manor whatsoever the heretofore referenced forebearance agreement that Chase Manhattan Mortgage Corp. may proceed at lenders option with the current foreclosure action, without the necessity of filing a new notice of default and election to sell. Trustors further understand and agree that in the event that they breach the above agreement all monies paid to Main Street Mortgage Company shall be applied by Chase Manhattan Mortgage Corp. at their discretion prior to an eventual foreclosure sale.

Agreed to this day 8 of May, 1995

By: [signature] By: ______________________
John Elstead

Accepted by Chase Manhattan Mortgage Corp. servicing agent for Bankers Trust Company

By: ______________________
Hakan Demirdoken

EXHIBIT 5



AMENDED AND RESTATED

SETTLEMENT AGREEMENT

AND

RELEASE

THIS AMENDED AND RESTATED SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") dated January 23, 1998, for reference purposes, is entered into by and between JOHN CLIFTON ELSTEAD ("ELSTEAD"), on the one hand, and CHASE MANHATTAN BANK ("CHASE"), on the other hand.

I.

FACTUAL RECITALS

1. This Agreement is entered into with reference to the following facts:

1.1 On or about October 19, 1988, ELSTEAD executed a Note, Deed of Trust and an Adjustable Rate Rider (together, the "Loan") in connection with the purchase of real property commonly known as 7460 Woodrow Drive, Oakland, California (hereinafter the "Property"). CHASE ultimately acquired the servicing obligations for that Loan.

1.2 At various times over the years, ELSTEAD was in default under the Note and Deed of Trust and on May 8, 1995, ELSTEAD entered into a Forbearance Agreement with Chase Manhattan Mortgage Corporation. After making the required payments under the Forbearance Agreement, CHASE asserted that ELSTEAD defaulted again on the loan. As a result, CHASE initiated foreclosure proceedings.

1.3 On February 19, 1997, ELSTEAD filed for protection under Chapter 13 of the Bankruptcy Code (the "Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). On or about April 14, 1997, CHASE filed a proof of claim (the "Proof of Claim") in the bankruptcy in the amount of $66,161.60 plus

D: 02-12-98

interest at the rate of 7.625%. On or about August 29, 1997, ELSTEAD filed an Objection to Claim acknowledging the validity of $43,120 plus interest at 7.625%, but objecting to the remainder of CHASE's Claim.

1.4 On or about August 12, 1997, ELSTEAD filed a Complaint in the Superior Court of the State of California for the County of Alameda, Case No. 787345-2 (hereinafter the "Lawsuit"). The Complaint alleged causes of action against CHASE and others for breach of contract, breach of covenant of good faith and fair dealing, breach of fiduciary duty, fraud, promissory fraud, intentional misrepresentation, negligent misrepresentation, negligence, intentional infliction of emotional distress, and conspiracy.

1.5 On or about September 4, 1997, CHASE removed the Lawsuit to the Bankruptcy Court, and the Lawsuit became an Adversary Proceeding, and was assigned Case No. 97-4483 (hereinafter the "Adversary Proceeding"). On or about October 3, 1997, CHASE filed its Answer to the Complaint, denying each of the material allegations therein and alleging various affirmative defenses. On or about October 2, 1997, ELSTEAD filed a Notice of Motion and Motion to Abstain and Remand the Adversary Proceeding (the "Remand Motion"). ELSTEAD and CHASE have executed a Stipulation and Order withdrawing the Remand Motion.

1.6 On December 19, 1997, the parties reached a settlement and ELSTEAD executed a Settlement Agreement and Release dated December 19, 1997, for reference purposes. The Settlement Agreement and Release was then forwarded to CHASE for signature.

1.7 It is now the desire and intention of ELSTEAD and CHASE to amend and restate the Settlement Agreement and Release. The Amended and Restated Settlement Agreement and Release hereby supersedes the December 19, 1997 Settlement Agreement and Release. Pursuant to and in accordance with this desire, the parties agree as hereinafter set forth.

II.

OBLIGATIONS OF THE PARTIES

2. Effectiveness of Agreement. This Agreement shall be effective only if executed by both parties and only if ELSTEAD dismisses the Bankruptcy case by January 30, 1998.

2.1 Obligations of CHASE. Within ten (10) business days following CHASE's receipt of a final entered order from the Bankruptcy Court dismissing the Bankruptcy Case, CHASE shall (a) tender to ELSTEAD a check in the amount of Fifteen Thousand Dollars ($15,000) (hereinafter the "Settlement Payment") and (b) pay, if it has not already done so, all outstanding real property taxes on the Property for the period 1994-1995, including any interest and/or penalties due as a result of nonpayment of the second installment of real property taxes for the 1994-1995 tax year.

2.2 Obligations of ELSTEAD.

2.2.1 Upon execution of this Agreement, ELSTEAD also shall execute and deliver to CHASE's Counsel, GRAY CARY WARE & FREIDENRICH (hereinafter "GCWF"), (a) a Request for Dismissal With Prejudice of the Lawsuit, and (b) a Stipulation of Dismissal With Prejudice of the Adversary Proceeding. CHASE agrees not to file these dismissals until CHASE has made the Settlement Payment as set forth in paragraph 2.1 (a) above. However, upon payment of the Settlement Payment, CHASE may immediately file the Request for Dismissal of the Lawsuit and the Stipulation of Dismissal of the Adversary Proceeding with the respective courts.

2.2.2 Commencing on ~~February~~ March 1, 1998, ELSTEAD shall pay to CHASE the sum of Forty Eight Thousand Five Hundred Sixty Three Dollars and Twenty-One Cents ($48,563.21), payable in equal monthly installments on the first day of each month for 36 months,

GRAY CARY 00943

at 10% per annum beginning February 1, 1998, until paid in full. This obligation shall remain a part of ELSTEAD's secured obligation under the Loan. There shall be no prepayment penalty for any of this amount.

2.3 Principal Loan Balance. The Parties acknowledge and agree that as of December 15, 1997, the total remaining principal balance due on the loan is Three Hundred Ninety-Three Thousand Eighty-Two Dollars and Forty-Two Cents ($393,082.42).

III.

RELEASE

3. Release. Except with respect to the obligations created by, acknowledged, or arising out of this Agreement, ELSTEAD does hereby for himself and his respective legal succ[illegible] [illegible] release, and absolutely and forever discharge CHASE, each of the named Defendants in the Lawsuit, and each of their respective shareholders, officers, directors, employees, agents, attorneys, servants, legal successors, heirs, executors, administrators, and assigns (hereinafter "Chase Released Parties") of and from any and all claims, demands, rights, damages, debts, liabilities, accounts, obligations, loss of profits, costs, expenses, liens, actions and causes of action of every kind and nature whatsoever, whether now known or unknown, suspected or unsuspected which ELSTEAD now has, owns or holds or at any time heretofore ever had, owned or held or could, shall or may hereafter have, own or hold against the Chase Released Parties based upon or arising out of any matter, cause, fact, thing, act or omission whatsoever occurring or existing at any time to and including the date hereof (all of which are hereinafter referred to as and included within the "Released Matters").

3.1 Waiver of Civil Code Section 1542. In furtherance of the intentions set forth herein, ELSTEAD acknowledges that he is familiar with section 1542 of the Civil Code of the State of California which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

ELSTEAD waives and relinquishes any right or benefit which he has or may have under section 1542 of the Civil Code of the State of California or any similar provision of the statutory or nonstatutory law of any other jurisdiction to the full extent that he may lawfully waive all such rights and benefits pertaining to the subject matter of this Agreement. In connection with such waiver and relinquishment, ELSTEAD acknowledges that he is aware that he or his attorneys or accountants may hereafter discover claims or facts in addition to or different from those which he now knows or believes to exist with respect to the subject matter of this Agreement or the other party hereto, but that it is his intention hereby fully, finally and forever to settle and release all of the Released Matters, whether known or unknown, suspected or unsuspected, which now exist, may exist or heretofore have existed by ELSTEAD against the Chase Released Parties, except as otherwise expressly provided in this Agreement. In furtherance of this intention, the release herein given shall be and remain in effect as a full and complete release notwithstanding the discovery or existence of any such additional or different claim or fact.

3.2 Warranties and Representations. ELSTEAD warrants and represents to CHASE that ELSTEAD is the sole and lawful owner of all right, title and interest in and to all of the Released Matters and that he has not heretofore voluntarily, by operation of law or otherwise, assigned or transferred or purported to assign or transfer to any person whomsoever any of the

Released Matters or any part or portion thereof of any claim, demand or right against the Chase Released Parties. ELSTEAD shall indemnify and hold harmless the Chase Released Parties from and against any claim, demand, damage, debt, liability, account, obligation, cost, expense, lien, action or cause of action (including payment of attorneys' fees and costs actually incurred whether or not litigation be commenced) caused by ELSTEAD and based on or in connection with or arising out of any assignment or transfer or purported or claimed assignment or transfer by ELSTEAD of any of the Released Matters.

3.3 No Future Participation. ELSTEAD agrees, to the fullest extent permitted by law, that he will not cooperate with, or voluntarily participate in, any arbitration, litigation, grievance, proceeding or administrative claim against any of the Chase Released Parties, except as otherwise allowed by this Agreement. ELSTEAD further agrees not to produce or disclose any of his documents concerning the Loan or the current dispute with CHASE to any person or entity, except as required by law, and agrees not to voluntarily cooperate with any person or entity in pursuing any claim against CHASE or any Chase Released Party.

IV.

CONFIDENTIALITY

4. The Parties agree they will keep the terms and conditions of this Agreement completely confidential and that they have not and will not hereafter disclose any information concerning the terms and conditions of this Agreement to anyone, other than their counsel and persons named in this Agreement, including without limitation, any person, organization, corporation or other business entity, except that such disclosure may occur for accounting or tax reporting or as otherwise may be required by law or to comply with the terms of this Agreement. Nothing herein shall prevent the parties from disclosing the fact that the case has been resolved

without disclosing any of the terms of the settlement or this Agreement. Such disclosure shall be limited to words to the effect that "the case has been satisfactorily resolved" without further comment. The parties acknowledge and agree that the confidentiality of the terms of the settlement and this Agreement is a material inducement to the parties in entering into this Agreement. The parties further agree that all documents, including correspondence exchanged by the parties or their counsel in connection with this matter, shall be treated as confidential and shall not be disclosed to any person not a party to this Agreement and shall not be used for any other purpose.

V.

BENEFICIARIES

5. This Agreement is not for the benefit of any person who is not a party signatory hereto or specifically named a beneficiary in this paragraph. The provisions of this Agreement and the releases contained herein shall extend to and inure to the benefit of and be binding upon, in addition to ELSTEAD and CHASE, just as if they had executed this Agreement: the respective legal successors and assigns of ELSTEAD and CHASE; each and every entity which now is or ever was a division, parent or subsidiary of CHASE and their respective legal successors and assigns; the respective past and present shareholders, officers, directors, agents, employees and attorneys of ELSTEAD and CHASE and of each such division, parent or subsidiary entity of CHASE and their respective legal successors and assigns; the Chase Released Parties; and each of the foregoing.

VI.

ATTORNEYS' FEES

6. CHASE and ELSTEAD agree that they each will pay their own costs, expenses and attorneys' fees relating to the Lawsuit, the Adversary Proceeding, and the events leading up to this Agreement, including but not limited to negotiation, drafting and execution of this Agreement, with the only exception that CHASE shall pay all JAMS mediation fees incurred to date in connection with this matter. The prevailing party or parties shall be entitled to recover from the losing party or parties their attorneys' fees and costs incurred in any lawsuit or other action brought to enforce any right arising out of this Agreement.

VII.

GENERAL PROVISIONS

7. No Admission of Liability. This Agreement and the Release contained herein and the payment of the monetary consideration referred to herein effect the settlement of claims which are denied and contested and neither anything contained herein nor the payment of any sum provided for herein shall be construed as an admission by a party hereto of any liability of any kind to the other party. Each party expressly denies that it is in any way liable or indebted to the other party, except as expressly set forth herein.

7.1 Independent Counsel - CHASE. CHASE acknowledges to ELSTEAD that it has been represented by independent legal counsel of its own choice throughout all of the negotiations which preceded the execution of this Agreement and that it has executed this Agreement with the consent and on the advice of such independent legal counsel. CHASE further acknowledges that it and its counsel have had adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject

matter of this Agreement prior to the execution hereof and the delivery and acceptance of the consideration specified herein.

7.2 Independent Counsel - ELSTEAD. ELSTEAD, who is an attorney, acknowledges to CHASE that he had adequate opportunity to be represented by independent legal counsel of his own choice throughout all of the negotiations which preceded the execution of this Agreement and that he had adequate opportunity to execute this Agreement with the consent and on the advice of such independent legal counsel. ELSTEAD further acknowledges that he had adequate opportunity to make whatever investigation or inquiry he may deem necessary or desirable in connection with the subject matter of this Agreement prior to the execution hereof and the delivery and acceptance of the consideration specified herein.

7.3 Waiver of Conflict. If litigation relating to this Agreement is instituted, ELSTEAD agrees that counsel for CHASE will not be disqualified from representing CHASE or any Chase Released Party by reason of their participation in the negotiation and discussions which occurred prior to the execution of this Agreement.

7.4 Counterparts. This Agreement may be executed in counterparts which, taken together, shall constitute one and the same agreement.

7.5 Governing Law. This Agreement and any other documents referred to herein shall in all respects be interpreted, enforced and governed by and under the laws of the State of California applicable to instruments, persons and transactions which have legal contacts and relationships solely within the State of California. Counsel for all parties have read and approved the language of this Agreement. The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the parties.

7.6 Headings. The title of the various articles of this Agreement are used for convenience of reference only and are not intended to and shall not in any way enlarge or diminish the rights or obligations of the parties or affect the meaning or construction of this document.

7.7 Gender Neutral. Whenever in this instrument the context so requires, the masculine gender shall be deemed to refer to and include the feminine and neuter, and the singular to refer to and include the plural.

7.8 Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior negotiations and agreements, whether written or oral. This Agreement may not be altered or amended except by an instrument in writing executed by all of the parties hereto. Notwithstanding the foregoing, nothing in this Agreement shall modify the terms of the Note, Deed of Trust or Adjustable Rate Rider.

7.9 Additional Documents. ELSTEAD and CHASE agree to execute any additional documents that are reasonably necessary to effect a full and complete dismissal with prejudice of the Lawsuit and the Adversary Proceeding.

7.10 Reimbursement for Duplicate Tax Payments, If Any. In the event that it is ever determined that both ELSTEAD and CHASE made any duplicate tax payments, or partial duplicate tax payments, for the Property, ELSTEAD agrees that CHASE is entitled to a reimbursement from the County Tax Assessor for such duplicate payment(s). In such event,

ELSTEAD agrees to sign any further documents and take all further actions reasonably necessary to accomplish this result.

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement and Release as of the dates indicated below.

JOHN CLIFTON ELSTEAD

By: [signature]
John Clifton Elstead

Dated: [handwritten: Jany 27], 1998

CHASE MANHATTAN BANK

By: [signature]

Its Assistant Secretary

Dated: February 12, 1998

APPROVED AS TO FORM:

GRAY CARY WARE & FREIDENRICH LLP

By: [signature]
Steven G. Cohen
Attorneys for CHASE MANHATTAN BANK

**CERTIFICATE OF SERVICE**

I, **KATHY P. TAT** declare:

That I am a citizen of the United States of America and employed in San Francisco County, California; that my business address is Office of United States Attorney, 450 Golden Gate Avenue, Box 36055, San Francisco, California 94102; that I am over the age of eighteen years, and am not a party to the above-entitled action.

I am employed by the United States Attorney for the Northern District of California and discretion to be competent to serve papers. The undersigned further certifies that I caused a copy of the following:

PETITION FOR REMOVAL OF CIVIL ACTION

to be served this date upon the party(ies) in this action by placing a true copy thereof in a sealed envelope, and served as follows:

_X___ **FIRST CLASS MAIL** by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing U.S. mail in accordance with this office's practice.

____ **PERSONAL SERVICE (BY MESSENGER)**

____ **FACSIMILE (FAX)** No.: ________________

to the parties addressed as follows:

PLEASE SEE ATTACHED LIST

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on **November 28, 2007** at San Francisco, California.

**KATHY P. TAT**
**Legal Assistant**

**SERVICE LIST**

John M. Sorich
Adorno Yoss Alvarado & Smith
A Professional Corporation
1 MacArthur Place, Suite 200
Santa Ana, CA 92707

John Clifton Elstead
7460 Woodrow Drive
Oakland, CA 9461 1

Sandra F. Elstead aka Sandra F. Wagner
35 Cedarbrook St.
Walnut Creek, CA 94597-6801

Susan Elstead
25 Arguello, C1
San Rafael, CA 94901 -2401

Law Offices of Walker & Durham
50 Francisco, #I60
San Francisco, CA 94133

MBNA America Bank, N.A.
1100 N. King St.
Wilmington, DE 19884

Fidelity National Title Ins. Co.
C T Corporation System
818 West Seventh Street
Los Angeles, CA 90017

Meuser Collection Company a corp dba
Meuser of California
C/O William P. Cole
1555 Doolitttle Drive #I70
San Leandro, CA 94577-0276

Universal Fences & Supply Inc.
2337 American Avenue
Hayward, CA 94545

City of Oakland
Mandatory Garbage Section
150 Frank H. Ogawa Plaza, Suite 5342
Oakland, CA 946 12