JOHN M. SORICH (CA Bar No. 125223)
jsorich@adorno.com
S. CHRISTOPHER YOO (CA Bar No. 169442)
cyoo@adorno.com
ROCIO HERRERA (CA Bar No. 237139)
rherrera@adorno.com
ADORNO YOSS ALVARADO & SMITH
A Professional Corporation
1 MacArthur Place, Suite 200
Santa Ana, California 92707
Tel: (714) 852-6800
Fax: (714) 852-6899

Attorneys for plaintiff
WACHOVIA BANK, N.A. AS TRUSTEE (BAYVIEW)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

WACHOVIA BANK, N.A. AS TRUSTEE (BAYVIEW), a national banking association

Plaintiff,

v.

JOHN CLIFTON ELSTEAD, an individual; SANDRA F. ELSTEAD, also known as SANDRA F. WAGNER, an individual; TITLE INSURANCE AND TRUST COMPANY, a California corporation; FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation; SUSAN ELSTEAD, an individual; LAW OFFICES OF WALKER & DURHAM, an entity of unknown form; THE UNITED STATES OF AMERICA; MBNA AMERICA BANK, N.A., a national banking entity; MEUSER COLLECTION COMPANY doing business as MEUSER OF CALIFORNIA, a California corporation; UNIVERSAL FENCES & SUPPLY, INC., a California corporation; THE CITY OF OAKLAND, a municipal entity; DOES 1 through 100, inclusive,

Defendant.

**CASE NO.:** CV076015 SI

Assigned to: Hon. Susan Illston

**PLAINTIFF'S STATEMENT OF FURTHER INFORMATION REGARDING (1) STATUS OF STATE APPEALS AND (2) IDENTIFICATION OF CLAIMS**

**DATE:** March 21, 2008
**TIME:** 9:00 a.m.
**DEPT:** "10"

///

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

In compliance with the Court Order of March 18, 2008, plaintiff Wachovia Bank, N.A., as trustee (Bayview) ("Wachovia") respectfully submits the following as its Statement of Further Information Regarding (1) Status of State Appeals and (2) Identification of Claims ("Statement"): defendant John Clifton Elstead's ("Elstead" or "Defendant") Motion to dismiss for failure to state a claim upon which relief can be granted ("Motion").

## I. STATUS OF APPEAL

Currently, there are two appeals pending in the Court of Appeals for the first district. The first appeal, entitled *Elstead v. JPMorgan Chase Bank, et al.*, Case number A117521, seeks review of court order granting a motion for summary judgment against Elstead. The second appeal, *Elstead v. JPMorgan Chase Bank, et al.*, Case number A119606, seeks review of the lower court's award of attorney's fees to the defendants. The appeals were consolidated on November 27, 2007, for briefing and argument into Case number A117521.

The record on appeal was filed with the Court of Appeals on the first appeal, case number A117521, on or about October 9, 2007, before the appeals were consolidated. *See*, Exhibit 1, a true and correct copy of the Docket, Register of Actions in Case number A11521. The record on appeal for the second appeal, original case number A11906 has not been submitted to the Court. *See*, Exhibit 2, a true and correct copy of the Docket, Register of Actions in Case number A11906 as Exhibit 2. The parties have submitted designations of clerks' transcripts. However, the clerk's transcripts have not been submitted to the Court. The appeal has not been perfected because all record designations or clerks transcripts have not been submitted to the Court.

The briefing schedules will be announced after the record on appeals have been completed and submitted to the Court.

## II. IDENTIFICATION OF CLAIMS ASSERTED IN THE STATE ACTION

Eleven causes of action were asserted by Elstead in the state court action, *Elstead v. JPMorgan Chase Bank*, Alameda County Superior Court case number 2002-046192. None of the causes of action asserted in the operative first amended complaint involved wrongful foreclosure. *See*, Exhibit 3, a true and correct copy of the operative complaint in *Elstead v. JPMorgan Chase Bank*, Alameda County Superior Court case number 2002-046192.

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

In essence, the allegations in the first amended complaint can be summarized as follows: Elstead entered into a forbearance agreement with Chase Home Finance LLC ("Chase") to prevent foreclosure of the subject property. Elstead purportedly complied with the forbearance agreement, but however, he was unable to resume his normal monthly mortgage payments and foreclosure proceedings were commenced against the subject property. Thereafter, Elstead declared bankruptcy to stop the foreclosure, and later entered into a "Resolution Agreement." Elstead contends he complied with the Resolution Agreement, however, foreclosure was threatened a third time. Thus, Elstead brought the state action to prevent foreclosure on the subject property and asserted the following causes of action: 1) Breach of contract; 2) Rescission of Contract; 3) Breach of Covenant of Good Faith and Fair Dealing; 4) Breach of Fiduciary Duty; 5) Fraud-Actual; 6) Fraud-Intentional Misrepresentation; 7) Fraud-Negligent Misrepresentation; 8) False Promise; 9) Defamation; 10) Violation of Fair Debt Collection Practices Act; 11) Intentional Infliction of Emotional Distress.

No counter-claims were asserted against Elstead.

The action affected title in the subject property to the extent that foreclosure was not completed during the litigation because the purported breach of the Resolution Agreement and forbearance agreement involved a dispute regarding the application of payments.

DATED: March 19, 2008

ADORNO YOSS ALVARADO & SMITH
A Professional Corporation

By: /s/ S. Christopher Yoo
JOHN M. SORICH
S. CHRISTOPHER YOO
ROCIO HERRERA
Attorneys for plaintiff
WACHOVIA BANK, N.A. AS TRUSTEE (BAYVIEW)

**EXHIBIT 1**

California Courts - Appellate Court Case Information http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=1&d...

CALIFORNIA APPELLATE COURTS
Case Information

Welcome
Search
E-mail
Calendar
Help
Opinions

C|C home

## 1st Appellate District

Change court

Court data last updated: 03/18/2008 03:05 PM

Case Summary Docket Scheduled Actions Briefs
Disposition Parties and Attorneys Trial Court

# Docket (Register of Actions)

**Elstead v. JP Morgan Chase Bank et al.**
**Division 2**
**Case Number A117521**

| Date | Description | Notes |
|---|---|---|
| 04/27/2007 | Notice of appeal lodged/received. | John Elstead; 04/12/07 |
| 04/27/2007 | Notified parties of local rules and procedures. | |
| 04/27/2007 | Filing fee. | Esner, Chang & Ellis; check |
| 04/26/2007 | Certificate of interested entities or persons filed by: | Respondents JP Morgan Chase Bank et al. |
| 05/09/2007 | Civil case information statement filed. | by atty Andrew Chang for aplt (John Elstead) w/a copy of the jdgmnt attached. |
| 05/18/2007 | Default notice received-appellant notified per rule 8.140(a)(1). | Fees (dated 5-15-07) |
| 05/24/2007 | Rec'd co. notice to appellant re: estimate. | dated 4/23/07. Fees due w/n 10 days. |
| 07/12/2007 | Telephone conversation with: | Valerie @ the superior court, she will be filing an EOT. |
| 10/03/2007 | Notice of record completion received. | |
| 10/09/2007 | Record on appeal filed. | c-18 r-2 |
| 10/09/2007 | Record in box. | 2 boxes |
| 10/16/2007 | 8.340 letter received from: | Brett Watson |
| 11/07/2007 | Stipulation filed to: | Consolidate Appeals A117521 & A119606 (to court) |

1 of 2 3/18/2008 3:14 PM

| | | |
|---|---|---|
| 11/08/2007 | Filed order consolidating with case: | It is ordered that the two appeals, A117521 and A119606, taken by plaintiffs in John Clifton Elstead v. JP Morgan Chase Bank, et al., Alameda County Superior Court case number 2002-046192, are consolidated in this Court for purposes of briefing, oral argument and decision. The Appellant's Opening Brief in both appeals will be due 30 days after the record on appeal in the second appeal has been filed in this Court. |

**Click here to request automatic e-mail notifications about this case.**

©2007 Judicial Council of California

# EXHIBIT 2



CALIFORNIA APPELLATE COURTS

Case Information

Welcome
Search
E-mail
Calendar
Help
Opinions

home

## 1st Appellate District

Change court

Court data last updated: 03/18/2008 03:05 PM

Case Summary Docket Scheduled Actions Briefs
Disposition Parties and Attorneys Trial Court

# Docket (Register of Actions)

**Elstead v. JP Morgan Chase Bank et al.**
**Division 2**
**Case Number A119606**

| Date | Description | Notes |
|---|---|---|
| 11/01/2007 | Notice of appeal lodged/received. | John Elstead; 10/30/07 |
| 11/01/2007 | Notified parties of local rules and procedures. | |
| 11/01/2007 | Filing fee. | Esner, Chang & Ellis; check |
| 11/07/2007 | Stipulation filed to: | Consolidate Appeals A117521 & A119606 (to court) |
| 11/08/2007 | Certificate of interested entities or persons filed by: | Respondents JP Morgan Chase Bank et al. |
| 11/08/2007 | Filed order consolidating with case: | It is ordered that the two appeals, A117521 and A119606, taken by plaintiffs in John Clifton Elstead v. JP Morgan Chase Bank, et al., Alameda County Superior Court case number 2002-046192, are consolidated in this Court for purposes of briefing, oral argument and decision. The Appellant's Opening Brief in both appeals will be due 30 days after the record on appeal in the second appeal has been filed in this Court. |
| 11/08/2007 | Civil case information statement filed. | by atty Andrew Chang for aplt (John Clifton Elstead) w/a copy of the order attached. |
| 11/13/2007 | Received: | rspdnt's designation of record; 11/09/07 |
| 01/03/2008 | Received: | aplnts designation of record; 11/08/07 |
| 01/23/2008 | Notice to reporter to prepare transcript. | sent to CSR Doriann Renaud dated 12/27/07. Txs due 1/27/08. |

**Click here to request automatic e-mail notifications about this case.**

© 2007 Judicial Council of California

# EXHIBIT 3

117.B

John Clifton Elstead, SBN 61048
THE ELSTEAD LAW FIRM
5820 Stoneridge Mall Road, Suite 203
Pleasanton, CA 94588
Telephone: (510) 463-2080
Facsimile: (510) 463-2172

Attorney for Plaintiff
John Clifton Elstead

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

JOHN CLIFTON ELSTEAD,

Plaintiff,

v.

JPMORGAN CHASE BANK, CHASE MANHATTAN MORTGAGE CORPORATION, CHASE MORTGAGE SERVICES, INC. and DOES ONE through FIFTY, Inclusive,

Defendants.

**CASE NO. 2002-046192**

**FIRST AMENDED COMPLAINT [VERIFIED]**

1. Breach of Contract
2. Rescission of Contract
3. Breach of Covenant of Good Faith and Fair Dealing
4. Breach of Fiduciary Duty
5. Fraud - Actual
6. Fraud - Intentional Misrepresentation
7. Fraud - Negligent Misrepresentation
8. False Promise
9. Defamation
10. Violation of Fair Debt Collection Practices Act
11. Intentional Infliction of Emotional Distress

The plaintiff alleges that:

## GENERAL ALLEGATIONS

1. The plaintiff John Clifton Elstead is an attorney and is the owner of and resides at the real property located at 7460 Woodrow Drive, Oakland, California 94611 (Residence).

2. The plaintiff is informed and believes, and on that ground alleges, that the defendants JP Morgan Chase Bank, Chase Manhattan Mortgage Corporation, Chase Mortgages Services, Inc., Does One through Fifty are, and at all times herein mentioned were, corporations or other forms of business entities authorized to do business and doing business

in the State of California as lenders, creditors, and debt collectors (Chase).

3. The plaintiff is ignorant of the true names and capacities of the defendants sued as Does One through Fifty and sues these defendants by such fictitious names. The plaintiff is informed and believes, and on that ground alleges, that the fictitiously named defendants are responsible in some manner for the occurrences alleged and that the damages alleged were proximately caused by each fictitiously named defendant.

4. The plaintiff is informed and believes, and on that ground alleges, that the defendants were agents and employees of each other and, in doing the things alleged, were acting within the scope of said agency and employment.

5. The plaintiff is informed and believes, and on that ground alleges, that the alleged acts and omissions of Chase were instances of a larger pattern of conduct involving the lending and servicing of loans of other borrowers in the State of California and that Chase was pursuing a pattern of fraudulent lending practices designed to force borrowers into default and to allow Chase to foreclose and sell the real property given as security by the borrowers.

6. The plaintiff borrowed $429,600.00 from the Sutter Mortgage Corporation (Sutter) on October 19, 1988 to purchase the Residence and secured the loan with a deed of trust (Deed of Trust) and variable rate promissory note (Note). (Exs. 1 and 2.) The Deed of Trust provided that monthly payments under the Note were to be applied to an escrow fund for property taxes and then to the principal and interest due under the Note. The Deed of Trust also provided that Sutter could waive the escrow fund for property taxes and allow the plaintiff to pay his own property taxes. Sutter executed such a waiver and this meant that monthly payments under the Note were to be applied to principal and interest and not to an escrow fund for property taxes (Waiver). (Ex. 3.)

7. The Note provided that the interest rate on the loan would never exceed 13.375% and that the monthly payments would be applied to principal and interest. It also provided that Sutter was to give written "notice of any change in ... the amount of [the] monthly payments." It did not provide that the monthly payments could be applied to an escrow fund for property taxes.

8. Sutter did not adhere to the Deed of Trust, Note, and Waiver and applied the monthly payments to an escrow fund for property taxes without notice to the plaintiff and did not apply those payments to principal and interest, thereby creating recurrent defaults under the Note that the plaintiff was forced to cure. Sutter was still doing this when Chase assumed the loan on March 22, 1995 and told the plaintiff that all future monthly payments should be made out to and sent to Chase. (Ex. 4.) Chase also told the plaintiff that the current monthly payment of principal and interest was $2,804.67 and that assumption of the loan did not affect the terms of the Deed of Trust, Note, and Waiver.

9. Chase affirmed and did not correct Sutter's failure to adhere to the Deed of Trust, Note, and Waiver. It sent an insufficient notice of foreclosure to the plaintiff on April 17, 1995 and told him it was going to sell the Residence on May 10, 1995 if he did not cure a supposed default under the Note. (Ex. 5.) The notice did not give the required thirty days notice and did not state the basis of the supposed default. The plaintiff called Chase to find out the basis of the supposed default and Chase told him that it did not know the basis and would get back to him. Chase knew, but did not tell the plaintiff, that the basis of the supposed default was Sutter's failure to apply the plaintiff's monthly payments to principal and interest.

10. Chase got back to the plaintiff on April 24, 1995 and told him that he had to pay $57,028.58 in arrearages to prevent the sale of the Residence on May 10, 1995. (Ex. 6.) Chase knew, but did not tell the plaintiff, that the arrearages were based on the application of nine monthly payments to an escrow fund for property taxes and not to principal and interest. Chase simply told the plaintiff that he owed $24,954.68 for nine monthly payments, $24,732.58 for property taxes, $5,273.51 for foreclosure costs, and $2,071 for miscellaneous costs.

11. The plaintiff did not know that his monthly payments had not been applied to principal and interest and wrote Chase on April 25, 1995 and explained that he was not behind on his payments. (Ex. 7.) He asked Chase to postpone the sale of the Residence until the issue of arrearages could be resolved, but Chase refused and proceeded with its plans to sell the

Residence on May 10, 1995.

12. The plaintiff did not want to lose the Residence and entered into an adhesive forebearance agreement with Chase on May 8, 1995 to prevent the sale of the Residence (Forebearance Agreement). (Ex. 8.) The plaintiff was involved in a custody dispute over his five year old daughter at the time and the unique nature of the Residence was a major factor in that dispute. The plaintiff's daughter was emotionally attached to the Residence that she had lived in since birth and that was a factor that led the court to find in favor of the plaintiff.

13. Under the terms of the Forebearance Agreement, the plaintiff agreed to pay $76,210.78 in eight monthly installments that covered the supposed arrearages and unpaid property taxes. The plaintiff agreed to make an initial payment of $32,295.30 on May 9, 1995 and seven monthly payments of $6,273.64 on June 1, July 1, August 1, September 1, October 1, November 1, and December 1, 1995. Chase agreed that these payments would satisfy all supposed arrearages and unpaid property taxes and that the loan would be reinstated as if there had been no arrearages and unpaid property taxes. Chase also agreed that the next regular monthly payment on January 1, 1996 would be $2,804.67.

14. The plaintiff made all payments required under the Forebearance Agreement and wrote to Chase on December 28, 1995 to confirm satisfaction of the Forebearance Agreement and reinstatement of the loan. (Ex. 9.) Chase confirmed that the plaintiff made all payments and satisfied the Forebearance Agreement. (Ex. 10.) Chase also confirmed that the payments under the Forebearance Agreement were for the supposed arrearages and unpaid property taxes and that the loan was reinstated as agreed. The plaintiff did not want any more issues with Chase regarding property taxes and sent a check for $8,062.22 to the county tax collector on January 1, 1996 for the 1996 property taxes. (Ex. 11.)

15. Although the plaintiff satisfied the Forebearance Agreement and was entitled to resume regular monthly payments of $2,804.67 on January 1, 1996, Chase did not adhere to the Forebearance Agreement and sent an unwarranted statement to the plaintiff on January 17,

1996 and told him that the monthly payment due on January 1, 1996 was $12,136.76! (Ex. 12.) Chase also sent a notice to the plaintiff on February 8, 1996 and told him it was going to foreclose on the Residence and sell it if he did not make the $12,136.76 payment within thirty days. (Ex. 13.)

16. The plaintiff called Chase to find out why it was demanding a $12,136.76 payment and threatening foreclosure. He explained that he satisfied the Forebearance Agreement and was current with all monthly payments and property taxes. He also explained that his monthly payment for January 1, 1996 was supposed to be $2,804.67. Chase told the plaintiff that it would postpone the sale of the Residence to investigate the matter and get back to him.

17. Chase got back to the plaintiff on February 20, 1996 and March 19, 1996 with two unwarranted statements. The statements said that the monthly payment due on January 1, 1996 was now $16,253.39 and $20,370.05, respectively! (Exs. 14 and 15.) Chase also sent a notice to the plaintiff on April 19, 1996 and told him that it was going "to immediately initiate foreclosure proceedings" and that he would "be notified as to the date the property needs to be vacated." (Ex. 16.)

18. The unwarranted statements that Chase sent to the plaintiff were based on Chase's failure to keep track of the plaintiff's account and on its erroneous conclusion that the plaintiff "did not keep" the Forebearance Agreement. (Ex. 17.) Chase decided to punish the plaintiff for its own mistakes and to what Sutter was doing when Chase assumed the loan on March 22, 1995, i.e., ignore the Deed of Trust, Note, Waiver, and Forebearance Agreement and create a default under the Note by applying the plaintiff's monthly payments to an escrow fund for property taxes and not to principal and interest.

19. Chase sent a notice to the plaintiff on June 25, 1996 and told him that he had to make a monthly payment of "$42,108.78" if he wanted to stop the sale of the Residence. (Ex. 18.) Chase did not tell the plaintiff that this unwarranted monthly payment was based on its failure to apply his monthly payments to principal and interest. Chase also paid the 1996 property taxes that the plaintiff previously paid on January 1, 1996 and increased the escrow

fund for property taxes with deposit of the plaintiff's monthly payments. (Ex. 19.)

20. The plaintiff called Chase after receiving the June 25, 1996 notice and asked Chase why it was threatening to sell the Residence. Chase did not tell the plaintiff that it believed he had not kept the Forebearance Agreement and told him that it was foreclosing because he had not paid the 1994 and 1995 property taxes. The plaintiff knew that he paid those property taxes through the Forebearance Agreement and wrote to Chase on October 30, 1996. (Ex. 20.) He explained that Chase did "not have the right ... to charge [him] for taxes that ... [he] already paid" and asked for "someone knowledgeable" to contact him so that the matter could be resolved. Chase responded by tacking a notice of foreclosure on the door of the Residence on January 22, 1997. (Ex. 21.) The notice said that Chase was going to "sell [the Residence] at public auction" on February 14, 1997.

21. The plaintiff wrote to Chase on January 24, 1997 and stated that he was "shocked" to find a foreclosure notice "tacked onto the front door of [his] home." (Ex. 22.) He explained again that he "paid all ... property taxes for 1994, 1995, and 1996" and that Chase was creating the alleged arrearages by "return[ing]" his payments and not applying them to principal and interest. He still did not know that Chase was applying his monthly payments to an escrow fund for property taxes and not to principal and interest.

22. Chase wrote to the plaintiff on January 31, 1997 and told him that it was going to go ahead with the foreclosure if he did not make a monthly payment of $57,617.66 by February 13, 1997! (Ex. 23.) Chase also wrote to the plaintiff on February 11, 1997 and told him that it would postpone the foreclosure for ten days if he re-paid the 1994 property taxes. (Ex. 24.) The plaintiff was in the middle of a four month jury trial at the time and did not have time to find out why Chase was mishandling his account and to take appropriate legal action. His only recourse was to file a petition for Chapter 13 bankruptcy on February 19, 1997 to stop the foreclosure. (Ex. 25.) When he finished that trial, he prepared a complaint and filed a lawsuit against Chase on August 12, 1997. (Ex. 26.)

23. The plaintiff dismissed his Chapter 13 bankruptcy on January 14, 1998 and signed an agreement with Chase on January 23, 1998 that confidentially resolved his lawsuit against Chase (Resolution Agreement). (Exs. 27 and 28.) He also sent a copy of the order dismissing the bankruptcy to Chase on January 30, 1998 and Chase acknowledged receipt of that order on February 27, 1998. (Exs. 29 and 30.)

24. Under the terms of the Resolution Agreement, Chase agreed to make a one time payment of a specified sum to the plaintiff and the plaintiff agreed to make monthly payments of a specified sum for thirty-six months that were in addition to his monthly payments for principal and interest. Chase also agreed to credit the Note with those payments. The plaintiff made the monthly payments under the Resolution Agreement and, as will be alleged in more detail, assumed that Chase was crediting the Note with those payments. The plaintiff did not discover until a few months ago that Chase did not do what it agreed to do under the Resolution Agreement and is now claiming that he did not satisfy the Resolution Agreement.

25. Chase did not adhere to the Deed of Trust, Note, Waiver, and Forebearance Agreement and sent an insufficient notice to the plaintiff on February 4, 1998 that it was going to foreclose on the Residence and sell it on March 3, 1998. (Ex. 31.) Chase also sent a statement to the plaintiff on February 19, 1998 that said he had an escrow balance of $17,931.04 and that his monthly payments of principal and interest were now $4,931.21. (Exs. 32 and 33.)

26. Chase also ignored the dismissal of the plaintiff's bankruptcy, continued to treat the plaintiff as if he was still in bankruptcy, and refused to communicate with the plaintiff and send him monthly statements. (Exs. 34 and 35.) Chase also changed its records to make it look like the plaintiff was in a Chapter 7 bankruptcy and began to send his monthly payments back to him with the notation that the amount was "insufficient to cure [the] default," thereby creating accruing defaults under the Note and setting the stage for foreclosure and sale of the Residence. (Exs. 36 and 37.)

27. Chase realized that the plaintiff was "making [his regular] monthly payments as

required" on October 29, 1998, but refused to apply those payments to principal and interest and continued to treat the plaintiff as if he was in bankruptcy and default. (Exs. 38 and 39.) An astute employee noted that Chase was mishandling the plaintiff's account and reported the problem on April 21, 1999, but Chase ignored her report and continued to mishandle the plaintiff's account as before. (Ex. 40.) The employee correctly reported that the plaintiff's account was "not supposed to be an escrow account" for property taxes and that the plaintiff was supposed to be making monthly payments of "2996.81," not "$4931.21!"

28. The plaintiff called Chase and asked why it was returning his monthly payments and not sending him monthly statements. Chase told him that it does not accept monthly payments from and does not send monthly statements to a borrower who is in bankruptcy. The plaintiff explained that he was not in bankruptcy and that he needed monthly statements so that he would know how much to pay under the variable rate note. Without monthly statements, the plaintiff had to estimate the interest rate on a monthly basis and, whenever his estimate was off by as little as a penny, Chase refused to accept the payment and added unwarranted late charges and penalty assessments to the Note. (Ex. 41.)

29. The plaintiff discovered that Chase did not cash his monthly payments for January, February, March, and April 1999 and called Chase on April 27, 1999. Chase told him that it was its policy to return monthly payments from a borrower in bankruptcy or to deposit them in a "suspense" account pending final resolution of the bankruptcy. The plaintiff reminded Chase that he was not in bankruptcy and asked Chase to stop treating him as if he was. Chase said that it would look into his bankruptcy status and get back to him, but it never did. Chase did not tell the plaintiff that deposit of his monthly payments into a suspense account meant that they would not be applied to principal and interest.

30. Chase wrote to the plaintiff on April 28, 1999 and told him that it would not communicate with him and would not send him monthly statements as long as he was in bankruptcy. (Ex. 42.) The plaintiff wrote back to Chase on April 29, 1999 and reminded Chase that he was not in bankruptcy. (Ex. 43.) He also asked Chase to apply his monthly payments to principal and interest and to explain why it was treating him as if he was still in

bankruptcy. Chase ignored the plaintiff's letter and did not respond.

31. Chase sent an account history to the plaintiff on June 21, 1999 that said it was not applying his monthly payments to principal and interest. (Ex. 44.) The plaintiff called Chase for an explanation and Chase told him that it would not communicate with him while he was in bankruptcy. The plaintiff reminded Chase that he was not in bankruptcy and asked Chase to apply his monthly payments to principal and interest. Chase said that it would look into the status of his bankruptcy and get back to him, but it never did.

32. The plaintiff wrote to Chase on July 8, 1999 and again reminded Chase that he was not in bankruptcy. (Ex. 45.) He also asked Chase to explain why it was not applying his monthly payments to principal and interest and was not sending him monthly statements. Chase responded on July 13, 1999 and said that his letter had been forwarded to the "appropriate department" for consideration of the "issue" he was raising. (Ex. 46.) The plaintiff never heard from the "appropriate department" and Chase continued to treat him as if he was in bankruptcy and refused to apply his monthly payments to principal and interest.

33. Chase wrote to the plaintiff on November 9, 2000 and told him that it paid $21,102.70 in property taxes for the Residence and had charged the payment to the Note. (Ex. 47.) The plaintiff called Chase on November 22, 2000 and explained that his property taxes were current and asked why Chase had paid them. Chase refused to explain why it paid the property taxes and continued to send the plaintiff's monthly payments back to him. The plaintiff wrote to Chase on October 2, 2001 and asked Chase why it was doing what it was doing, but Chase ignored his letter and did not respond. (Ex. 48.)

34. Chase also began to call the plaintiff several times a week and harass him about the supposed default under the Note. The callers would not identify themselves except to say that they were calling for Chase. When the plaintiff asked the callers to identify themselves, they said that they were instructed not to talk to him and hung up. Chase also wrote to consumer reporting agencies and reported that the plaintiff was in default under the Note. The consumer reporting agencies reported the default and supposed arrearages on the plaintiff's credit reports.

35. Chase returned the plaintiff's monthly payments for January and February on January 10, 2002 and March 9, 2002 with the notation "Funds insufficient to cure default." (Exs. 49 and 50.) Chase also sent a statement to the plaintiff on January 16, 2002 that said he was in default and had to make a monthly payment of $96,225.04 by February 1, 2002. (Ex. 51.) The plaintiff responded on March 1, 2002 and March 6, 2002 and told Chase that he was still trying to find out why it was not applying his monthly payments to principal and interest. (Exs. 52 and 53.) The plaintiff explained that he was making his monthly payments and asked why Chase kept calling him and hanging up on him when he answered the phone.

36. Chase wrote to the plaintiff on March 9, 2002 and told him that he was in default because he had not made monthly payments for three years and owed Chase $94,570.79. (Ex. 54.) Chase also told the plaintiff that he had "30 days [from March 9, 2002]... to cure the default .. [or] ... foreclosure action will began." The plaintiff asked Chase in a March 15, 2002 letter to explain the basis of the supposed default, but Chase ignored his letter and did not respond. (Ex. 55.) The plaintiff also called Chase for an explanation, but Chase told him it would not talk to him while he was in bankruptcy.

37. The plaintiff filed this action against Chase on April 4, 2002 and alleged that Chase fraudulently breached the Deed of Trust, Note, Waiver, and Forebearance Agreement. The plaintiff did not allege a breach of the Resolution Agreement and seek rescission of the Resolution Agreement at that time because he did not know that Chase was going to raise the Resolution Agreement as a defense and claim that he did not make the payments under the Resolution Agreement. The supposed default of $94,570.79 reflected unapplied payments under the Note for several years and did not reflect unapplied payments under the Resolution Agreement. Chase repeatedly refused to explain the bases for its action and the plaintiff assumed that Chase was doing what it had done before and was not applying his monthly payments to principal and interest.

38. The plaintiff did not suspect that Chase was going to raise the Resolution Agreement as a defense and claim that he did not satisfy the Resolution Agreement until

Chase sent him a copy of a proposed first amended answer on September 16, 2004 and sent him an account statement on the same date. (Exs. 56 and 57.) The proposed first amended answer raised the Resolution Agreement as a defense for the first time and the new account statement stated that the supposed arrearages were now $162,071.91. (Ex. 56: p.7: 16-17; p.14: 14-23.) This increase in supposed arrearages from $94,570.79 to $162,071.91 suggested that Chase was now adding payments under the Resolution Agreement to payments under the Note to create more supposed arrearages.

39. The plaintiff's suspicions were confirmed when Chase filed its second amended answer on January 18, 2005 and took his deposition on April 19, 2005. The second amended answer reasserted the Resolution Agreement as a defense in more detail and the deposition revealed the claim that the plaintiff did not satisfy the Resolution Agreement. (Ex. 58: p.11: 20-27; p.12: 1-3, 23-28; p.13: 1-3; p.14: 1-12; p.15: 22-28;p.16: 1-16; p.18: 2-24; p.19: 8-18.) Chase's counsel stated during the deposition that Chase was now claiming that the plaintiff did not satisfy the Resolution Agreement. (Ex. 59: p.25: 5-12.)

## FIRST CAUSE OF ACTION
**(Breach of Contract)**

40. The plaintiff incorporates each and every allegation of Paragraphs 1 through 39, inclusive, as though fully set forth in this cause of action.

41. Under the terms of the Deed of Trust, Note, and Waiver the plaintiff agreed to make monthly payments of principal and interest and Chase agreed to accept those payments and apply them to principal and interest. The plaintiff made the monthly payments he agreed to and performed all other acts required of him under the Deed of Trust, Note, and Waiver.

42. Chase failed and refused, and continues to fail and refuse, to adhere to and perform the acts agreed to under the Deed of Trust, Note, and Waiver. Chase has refused to accept and apply the plaintiff's monthly payments to principal and interest and has created unwarranted defaults under the Note.

43. Under the terms of the Forebearance Agreement, the plaintiff agreed to pay all

supposed arrearages and unpaid property taxes and Chase agreed to accept payment in full satisfaction of the supposed arrearages and unpaid property taxes and reinstate the loan as if there had been no arrearages and unpaid property taxes. The plaintiff performed all acts required of him under the Forebearance Agreement.

44. Chase failed and refused, and continues to fail and refuse, to adhere to and perform the acts agreed to under the Forebearance Agreement. Chase has treated the plaintiff's account as an escrow account for property taxes and has refused to apply his monthly payments to principal and interest. Chase has also declared that the plaintiff is in default under the Note and has threatened, and continues to threaten, to institute foreclosure proceedings to sell the Residence and take it away from the plaintiff.

45. Under the terms of the Resolution Agreement, the plaintiff "resolved" the lawsuit he filed against Chase on August 12, 1997. The plaintiff agreed to make specific monthly payments that would be separate from his monthly principal and interest payments and Chase agreed to accept those payments and apply them to the Note. The plaintiff performed all acts required of him under the Resolution Agreement.

46. Chase failed and refused, and continues to fail and refuse, to adhere to and perform the acts agreed to under the Resolution Agreement. Chase erroneously calculated the amount the plaintiff agreed to pay under the Resolution Agreement and has added that erroneous amount to supposed arrearages under the Note. Chase has also declared that the plaintiff is in default under the Note and has threatened, and continues to threaten, to institute foreclosure proceedings to sell the Residence and take it away from the plaintiff.

47. In engaging in the course of conduct alleged in this cause of action, Chase acted in concert with, conspired with, and was aided and abetted by each other defendant, all to further their own interests at the expense of the plaintiff's interests.

48. As a proximate result of the acts and omissions of Chase, the plaintiff has sustained damages in an amount within the jurisdiction of the court and is entitled to reasonable attorney fees under the Note.

**SECOND CAUSE OF ACTION**
**(Rescission of Contract)**

49. The plaintiff incorporates each and every allegation of Paragraphs 1 through 48, inclusive, as though fully set forth in this cause of action.

50. There has been a material failure in the consideration received by the plaintiff under the Resolution Agreement. Chase failed to adhere to and perform the acts agreed to under the Resolution Agreement and continues to use an erroneous calculation of the amount the plaintiff agreed to pay under the Resolution Agreement to increase supposed arrearages under the Note. Chase has continued to do these things despite demands by the plaintiff for Chase to stop treating him as if he was in default under the Note and to stop seeking to foreclose on the Residence and take it away from him.

51. Service of the summons and pleadings in this action constitutes notice of rescission of the Resolution Agreement and an offer by the plaintiff under section 1691 of the Civil Code to restore any benefits he received under the Resolution Agreement.

**THIRD CAUSE OF ACTION**
**(Breach of Covenant of Good Faith and Fair Dealing)**

52. The plaintiff incorporates each and every allegation of Paragraphs 1 through 51, inclusive, as though fully set forth in this cause of action.

53. There was implied in the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement a covenant of good faith and fair dealing whereby Chase covenanted that it would act in good faith and deal fairly with the plaintiff with respect to those agreements and would do nothing to impair, interfere with, hinder, or potentially injure the plaintiff's rights under those agreements. Chase, however, failed and refused, and continues to fail and refuse, to act in good faith and deal fairly with the plaintiff as covenanted.

54. In the absence of a reasonable basis for doing so, and in willful and conscious disregard of the consequences for the plaintiff, Chase breached its covenant under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and engaged in and

continues to engage in a course of conduct to further its own economic interests over those of the plaintiff, including, but not limited to:

a) Failing and refusing to adhere to and perform the acts agreed to under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement;

b) Failing and refusing to disclose material facts about the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement that it had superior knowledge of and which it knew was not known by or readily accessible to the plaintiff;

c) Failing and refusing to apply the plaintiff's monthly payment to principal and interest;

d) Failing and refusing to keep proper track of the plaintiff's monthly payments and account;

e) Failing and refusing to respond to the plaintiff's written and oral inquires about his monthly payments and account;

f) Wrongfully applying the plaintiff's monthly payments to an escrow fund for property taxes and to a suspense account;

g) Wrongfully creating and manufacturing a default under the Note by not applying the plaintiff's monthly payments to principal and interest and applying them to an escrow fund for property taxes and a suspense account;

h) Wrongfully instituting foreclosure proceedings to sell the Residence and take it away from the plaintiff;

i) Wrongfully treating the plaintiff as if he was in bankruptcy when he was not and refusing to communicate with him and send him monthly statement;

j) Wrongfully treating the plaintiff as if he was in a Chapter 7 bankruptcy when he was not and instituting foreclosure proceedings to sell the Residence and take it away from the plaintiff;

k) Wrongfully preventing the plaintiff from performing the acts he agreed to under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement; and

l) Otherwise failing and refusing to act in the utmost good faith towards the plaintiff.

55. The plaintiff has performed, and continues to be ready to perform, each and every covenant and condition under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement, except those which Chase has prevented him from performing, or which he has been excused from performing or were waived by Chase's misconduct.

56. In engaging in the course of conduct alleged in this cause of action, Chase acted in concert with, conspired with, and was aided and abetted by each other defendant, all to further their own interests at the expense of the plaintiff's interests.

57. As a proximate result of the acts and omissions of Chase, the plaintiff has sustained damages in an amount within the jurisdiction of the court and is entitled to reasonable attorney fees from Chase under the Note.

58. As a further proximate result of the acts and omissions of Chase, the plaintiff has suffered and will continue to suffer in the future anxiety, worry, mental, and emotional distress, all to his damage in an amount that has not yet been ascertained.

59. The acts and omissions of Chase, were done with oppression, fraud, and malice as defined by section 3294 of the California Civil Code and the plaintiff is entitled to exemplary and punitive damages in an amount appropriate for the sake of example and for punishing Chase.

## FOURTH CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

60. The plaintiff incorporates each and every allegation of Paragraphs 1 through 59, inclusive, as though fully set forth in this cause of action.

61. A fiduciary relationship existed between Chase and the plaintiff and Chase owed fiduciary duties to the plaintiff and as a result of the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement. Chase was the beneficiary and servicing agent under those agreements and was the trustee of the funds the plaintiff paid under those agreements. Chase also had control over the plaintiff's ability to pay down the

Note and perform the acts required of him under those agreements.

62. Without a reasonable basis for doing so, and in willful and conscious disregard of the consequences, Chase breached its fiduciary duties to the plaintiff under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and engaged in, and continues to engage in, a course of conduct to further its own economic interests over those of the plaintiff, including, but not limited to:

a) Failing and refusing to adhere to and perform the acts agreed to under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement;

b) Failing and refusing to disclose material facts about the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement that it had superior knowledge of and which it knew was not known by or readily accessible to the plaintiff;

c) Failing and refusing to apply the plaintiff's monthly payment to principal and interest;

d) Failing and refusing to keep proper track of the plaintiff's monthly payments and account;

e) Failing and refusing to respond to the plaintiff's written and oral inquires about his monthly payments and account;

f) Wrongfully applying the plaintiff's monthly payments to an escrow fund for property taxes and a suspense account;

g) Wrongfully creating and manufacturing a default under the Note by not applying the plaintiff's monthly payments to principal and interest and applying them to an escrow fund for property taxes and a suspense account;

h) Wrongfully instituting foreclosure proceedings to sell the Residence and take it away from the plaintiff;

i) Wrongfully treating the plaintiff as if he was in bankruptcy when he was not and refusing to communicate with him and send him monthly statement;

j) Wrongfully treating the plaintiff as if he was in a Chapter 7 bankruptcy when he was not and instituting foreclosure proceedings to sell the Residence and take it away from

the plaintiff;

k) Wrongfully preventing the plaintiff from performing the acts he agreed to under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement; and

l) Otherwise failing and refusing to act in the utmost good faith towards the plaintiff.

63. When Chase failed to disclose material facts concerning the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and breached its fiduciary duties, it knew that the undisclosed material facts were neither known by nor readily accessible to the plaintiff and that the plaintiff was relying, trusting, and confiding in Chase and expecting Chase to act in good faith regarding his interests.

64. Chase breached its fiduciary duties to the plaintiff with the intent to defraud and deceive the plaintiff and to take the Residence away from him.

65. In engaging in the course of conduct alleged in this cause of action, Chase acted in concert with, conspired with, and was aided and abetted by each other defendant, all to further their own interests at the expense of the plaintiff's interests.

66. As a proximate result of the acts and omissions of Chase, the plaintiff has sustained damages in an amount within the jurisdiction of the court and is entitled to reasonable attorney fees from Chase under the Note.

67. As a further proximate result of the acts and omissions of Chase, the plaintiff has suffered and will continue to suffer in the future anxiety, worry, mental, and emotional distress, all to his damage in an amount that has not yet been ascertained.

68. The acts and omissions of Chase, were done with oppression, fraud, and malice as defined by section 3294 of the California Civil Code and the plaintiff is entitled to exemplary and punitive damages in an amount appropriate for the sake of example and for punishing Chase.

**FIFTH CAUSE OF ACTION**
**(Fraud - Actual)**

69. The plaintiff incorporates each and every allegation of Paragraphs 1 through 68, inclusive, as though fully set forth in this cause of action.

70. Chase agreed and represented to the plaintiff that it would adhere to and perform all acts required of it under the Deed of Trust, Note, and Waiver and would accept and apply the plaintiff's payments to principal and interest. Chase also agreed and represented to the plaintiff that he would not be in default under the Note if he made his payments under those agreements and that it would not initiate foreclosure proceedings to sell the Residence unless there was an actual and substantial default under the Note.

71. Chase agreed and represented to the plaintiff that it would adhere to and perform all acts required of it under the Forebearance Agreement and Resolution Agreement and would accept and apply the plaintiff's payments to principal and interest. Chase also agreed and represented to the plaintiff that he would not be in default under the Note if he made his payments under those agreements and that it would not initiate foreclosure proceedings to sell the Residence unless there was an actual and substantial default under the Note. Chase also agreed and represented that the payments under the Forebearance Agreement and Resolution Agreement would satisfy all supposed arrearages and unpaid property taxes.

72. When Chase agreed to adhere to and perform the acts required of it under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement, and made the representations described in paragraphs 70 and 71, Chase never intended to adhere to and perform the acts required of it under those agreements and knew that its representations were false. Chase never intended to accept the plaintiff's monthly payments and apply them to principal and interest. Chase also never intended to stop claiming that the plaintiff was in default under the Note and to stop initiating foreclosure proceedings to sell the Residence and take it away from the plaintiff. Chase continues to refuse to accept and apply the plaintiff's monthly payments to principal and interest and continues to initiate foreclosure proceedings to sell the Residence and take it away from the plaintiff.

73.  Chase knew that it was not going to adhere to and perform the acts required of it under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and that the representations it made to the plaintiff were false when it made them and, knowing that the plaintiff was ignorant of its false representations, made them for the purpose of inducing the plaintiff to rely on them to his detriment so that it could create and manufacture a default and initiate foreclosure proceedings to sell the Residence and take it away from him.  The plaintiff was ignorant of the falsity of Chase's representations and reasonably believed them to be true because Chase had superior knowledge about what it was representing and had fiduciary responsibilities to the plaintiff.

74.  Based on Chase's representations, and the belief that they were true and would be kept, the plaintiff was induced to enter into the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and to make payments under those agreements.  Had the plaintiff known the true facts, he would not have entered into those agreements and would have filed an action against Chase sooner than he has.

75.  In engaging in the course of conduct alleged in this cause of action, Chase acted in concert with, conspired with, and was aided and abetted by each other defendant, all to further their own interests at the expense of the plaintiff's interests.

76.  As a proximate result of the acts and omissions of Chase, the plaintiff has sustained damages in an amount within the jurisdiction of the court and is entitled to reasonable attorney fees from Chase under the Note.

77.  As a further proximate result of the acts and omissions of Chase, the plaintiff has suffered and will continue to suffer in the future anxiety, worry, mental, and emotional distress, all to his damage in an amount that has not yet been ascertained.

78.  The acts and omissions of Chase, were done with oppression, fraud, and malice as defined by section 3294 of the California Civil Code and the plaintiff is entitled to exemplary and punitive damages in an amount appropriate for the sake of example and for punishing Chase.

**SIXTH CAUSE OF ACTION**
**(Fraud - Intentional Misrepresentation)**

79. The plaintiff incorporates each and every allegation of Paragraphs 1 through 78, inclusive, as though fully set forth in this cause of action.

80. When Chase entered into the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and represented to the plaintiff that it would adhere to and perform all acts required of it under those agreements and would accept and apply the plaintiff's payments to principal and interest, Chase knew that its representations were false and made them with the intent to deceive the plaintiff and to induce the plaintiff to enter into those agreements and make the payments required under those agreements. Chase never had any intention of adhering to and performing the acts required of it under those agreements and never had any intention of accepting the payments required under those agreements and applying them to principal and interest. Chase intended, instead, to create and manufacture a default and initiate foreclosure proceedings to sell the Residence and take it away from the plaintiff.

81. When Chase entered into the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and represented to the plaintiff that it would not initiate foreclosure proceedings to sell the Residence unless there was an actual and substantial default under those agreements, Chase knew that its representations were false and made them with the intent to deceive and induce the plaintiff to enter into those agreements and make the payments required payments under those agreements. Chase never had any intention of adhering to and performing the acts required of it under those agreements and never had any intention of waiting for an actual and substantial default before initiating foreclosure proceedings to sell the Residence. Chase intended, instead, to create and manufacture a default and initiate foreclosure proceedings to sell the Residence and take it away from the plaintiff.

82. When Chase entered into the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and made the representations described in paragraphs

80 and 81, Chase never intended to adhere to and perform the acts required of it under those agreements and knew that its representations were false. The plaintiff was ignorant of the falsity of the representations and, believing they were true, justifiably relied on them and entered into those agreements and made the payments required under those agreements.

83. In engaging in the course of conduct alleged in this cause of action, Chase acted in concert with, conspired with, and was aided and abetted by each other defendant, all to further their own interests at the expense of the plaintiff's interests.

84. As a proximate result of the acts and omissions of Chase, the plaintiff has sustained damages in an amount within the jurisdiction of the court and is entitled to reasonable attorney fees from Chase under the Note.

85. As a further proximate result of the acts and omissions of Chase, the plaintiff has suffered and will continue to suffer in the future anxiety, worry, mental, and emotional distress, all to his damage in an amount that has not yet been ascertained.

86. The acts and omissions of Chase, were done with oppression, fraud, and malice as defined by section 3294 of the California Civil Code and the plaintiff is entitled to exemplary and punitive damages in an amount appropriate for the sake of example and for punishing Chase.

**SEVENTH CAUSE OF ACTION**
**(Fraud - Negligent Misrepresentation)**

87. The plaintiff incorporates each and every allegation of Paragraphs 1 through 86, inclusive, as though fully set forth in this cause of action.

88. When Chase entered into the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and represented to the plaintiff that it would adhere to and perform all acts required of it under those agreements and would accept and apply the plaintiff's payments to principal and interest, Chase had no reasonable ground for believing those representations were true and made them with the intent to induce the plaintiff to enter into those agreements and make the payments required under those agreements. Chase never had any intention of adhering to and performing the acts required of it under those agreements

and never had any intention of accepting the payments required under those agreements and applying them to principal and interest. Chase intended, instead, to create and manufacture a default and initiate foreclosure proceedings to sell the Residence and take it away from the plaintiff.

89. When Chase entered into the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and represented to the plaintiff that it would not initiate foreclosure proceedings to sell the Residence unless there was an actual and substantial default under those agreements, Chase had no reasonable grounds for believing those representations were true and made them with the intent to induce the plaintiff to enter into those agreements and make the payments required under those agreements. Chase never had any intention of adhering to and performing the acts required of it under those agreements and never had any intention of waiting for an actual and substantial default before initiating foreclosure proceedings to sell the Residence. Chase intended, instead, to create and manufacture a default and initiate foreclosure proceedings to sell the Residence and take it away from the plaintiff.

90. When Chase entered into the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement, and made the representations described in paragraphs 88 and 89, Chase had no reasonable basis for believing that its representations were true. The plaintiff was ignorant of this and, believing the representations were true, justifiably relied on them and entered into those agreements and made the payments required under those agreements.

91. In engaging in the course of conduct alleged in this cause of action, Chase acted in concert with, conspired with, and was aided and abetted by each other defendant, all to further their own interests at the expense of the plaintiff's interests.

92. As a proximate result of the acts and omissions of Chase, the plaintiff has sustained damages in an amount within the jurisdiction of the court and is entitled to reasonable attorney fees from Chase under the Note.

93. As a further proximate result of the acts and omissions of Chase, the plaintiff has

suffered and will continue to suffer in the future anxiety, worry, mental, and emotional distress, all to his damage in an amount that has not yet been ascertained.

94. The acts and omissions of Chase, were done with oppression, fraud, and malice as defined by section 3294 of the California Civil Code and the plaintiff is entitled to exemplary and punitive damages in an amount appropriate for the sake of example and for punishing Chase.

**EIGHTH CAUSE OF ACTION**
**(False Promise)**

95. The plaintiff incorporates each and every allegation of Paragraphs 1 through 94, inclusive, as though fully set forth in this cause of action.

96. When Chase agreed to adhere to and promised to perform the acts required of it under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement, and when it made the representations described in paragraph 70, 71, 80, 81, 88, and 89, Chase knew that its promises were false. Chase never had any intention of adhering to and performing the acts required of it under those agreements and never had any intention of accepting and applying the plaintiff's payments under those agreements to principal and interest. Chase also never intended to stop declaring that the plaintiff was in default under those agreements and never intended to stop initiating foreclosure proceedings to sell the Residence. Chase continues to refuse to accept and apply the plaintiff's payments under those agreements to principal and interest and continues to refuse to reinstate the loan after the plaintiff made all payments required under those agreements. Chase has created and manufactured a default under the Note and has continued to initiate foreclosure proceedings to sell the Residence and take it away from the plaintiff.

97. Chase knew that it was not going to adhere to and perform the acts required of it under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and that the promises it made to the plaintiff about those agreements were false and, knowing that the plaintiff was ignorant of the falsity of its promises, made them for the purpose of inducing the plaintiff to rely on them to his detriment so that it could create and manufacture a

default under those agreements and initiate foreclosure proceedings to sell the Residence and take it away from the plaintiff. The plaintiff was ignorant of the falsity of Chase's promises and representations and reasonably believed them to be true because of Chase's superior knowledge about what it was promising and its fiduciary responsibilities to him.

98. Based on Chase's promises and the belief that they were true and would be kept, the plaintiff was induced to enter into the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and to make the payments under those agreements. Had the plaintiff known the true facts, he would not have entered into those agreements and would have filed an action against Chase sooner than he has.

99. In engaging in the course of conduct alleged in this cause of action, Chase acted in concert with, conspired with, and was aided and abetted by each other defendant, all to further their own interests at the expense of the plaintiff's interests.

100. As a proximate result of the acts and omissions of Chase, the plaintiff has sustained damages in an amount within the jurisdiction of the court and is entitled to reasonable attorney fees from Chase under the Note.

101. As a further proximate result of the acts and omissions of Chase, the plaintiff has suffered and will continue to suffer in the future anxiety, worry, mental, and emotional distress, all to his damage in an amount that has not yet been ascertained.

102. The acts and omissions of Chase, were done with oppression, fraud, and malice as defined by section 3294 of the California Civil Code and the plaintiff is entitled to exemplary and punitive damages in an amount appropriate for the sake of example and for punishing Chase.

## NINTH CAUSE OF ACTION
**(Defamation)**

103. The plaintiff incorporates each and every allegation of Paragraphs 1 through 102, inclusive, as though fully set forth in this cause of action.

104. When Chase wrote to consumer reporting agencies and reported that the plaintiff was in default under the Note and owed supposed arrearages, and when the consumer

reporting agencies published the supposed default and arrearages, the statements were false and Chase knew they were false. The plaintiff is not in default under the Note and does not owe Chase arrearages.

105. The written publications that the plaintiff is in default under the Note and owes arrearages are defamatory on their face. They expose the plaintiff to contempt, ridicule, and obloquy and have a tendency to injure him in his occupation. They imply that the plaintiff is not successful in his law practice and is not able to pay his debts.

106. Chase acted intentionally and negligently when it published the aforementioned defamatory statements. Chase knew, or should have known with ordinary and reasonable care, that the plaintiff was not in default under the Note and did not owe arrearages.

107. In engaging in the course of conduct alleged in this cause of action, Chase acted in concert with, conspired with, and was aided and abetted by each other defendant, all to further their own interests at the expense of the plaintiff's interests.

108. As a proximate result of the acts and omissions of Chase, the plaintiff has sustained damages in an amount within the jurisdiction of the court and is entitled to reasonable attorney fees from Chase under the Note.

109. As a further proximate result of the acts and omissions of Chase, the plaintiff has suffered and will continue to suffer in the future anxiety, worry, mental, and emotional distress, all to his damage in an amount that has not yet been ascertained.

110. The acts and omissions of Chase, were done with oppression, fraud, and malice as defined by section 3294 of the California Civil Code and the plaintiff is entitled to exemplary and punitive damages in an amount appropriate for the sake of example and for punishing Chase.

**TENTH CAUSE OF ACTION**
**(Violation of Fair Debt and Collection Practices Act)**

111. The plaintiff incorporates each and every allegation of Paragraphs 1 through 110, inclusive, as though fully set forth in this cause of action.

112. This cause of action is brought under the Fair Debt Collections Practices Act

(FDCPA – Civil Code sections 1788 et seq.)

113. Chase is a creditor and is also in the business of debt collection as a debt collector as defined in section 1788.2(c) of the FDCPA.

114. Chase violated section 1788.10 of the FDCPA when it attempted to collect the supposed arrearages under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement by threatening to initiate foreclosure proceedings to sell the Residence and take it away from the plaintiff. The plaintiff is not in arrears under those agreements to Chase has no right under those agreements or any law to initiate foreclosure proceedings to sell the Residence and take it away from the plaintiff.

115. Chase violated section 1788.11 of the FDCPA when it attempted to collect the supposed arrearages under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement by repeatedly calling the plaintiff without disclosing the caller's identity and by doing so with such frequency as to be unreasonable and harassing. Chase repeatedly called the plaintiff and when the plaintiff asked who was calling and why, the caller said he was from Chase, could not talk to him, and hung up.

116. Chase violated section 1788.12 of the FDCPA when it attempted to collect the supposed arrearages under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement by disclosing, publishing, and communicating information to consumer reporting agencies and other persons about the supposed arrearages without a reasonable belief that it had a legitimate business reason to do so. Chase knows, or should know, that the plaintiff is not in arrears under those agreements and does not owe Chase arrearages.

117. Chase violated section 1788.13 of the FDCPA when it attempted to collect the supposed arrearages under the Deed of Trust, Note, Waiver, Forebearance Agreement, and Resolution Agreement and added late charges and other penalty assessments to the Note. Chase knows, or should know, that the plaintiff is not in arrears under those agreements and that it does not have the right to add charges and other penalty assessments to the Note.

118. As a result of the violations of FDCPA, the plaintiff is entitled to damages and

reasonable attorney's fees under section 1788.30 of the FDCPA.

119. In engaging in the course of conduct alleged in this cause of action, Chase acted in concert with, conspired with, and was aided and abetted by each other defendant, all to further their own interests at the expense of the plaintiff's interests.

120. As a proximate result of the acts and omissions of Chase, the plaintiff has sustained damages in an amount within the jurisdiction of the court and is entitled to reasonable attorney fees from Chase under the Note.

121. As a further proximate result of the acts and omissions of Chase, the plaintiff has suffered and will continue to suffer in the future anxiety, worry, mental, and emotional distress, all to his damage in an amount that has not yet been ascertained.

122. The acts and omissions of Chase, were done with oppression, fraud, and malice as defined by section 3294 of the California Civil Code and the plaintiff is entitled to exemplary and punitive damages in an amount appropriate for the sake of example and for punishing Chase.

**ELEVENTH CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**

123. The plaintiff incorporates each and every allegation of Paragraphs 1 through 122, inclusive, as though fully set forth in this cause of action.

124. Chase has pursued an outrageous course of conduct that was intended to cause the plaintiff severe emotional distress and that was in reckless disregard of the probability of causing the plaintiff severe emotional distress. Chase knows that the Residence is important to the plaintiff and knows that its continued threats to foreclose and sell the Residence and refusal to tell the plaintiff why it is doing what it is doing has and will cause the plaintiff severe emotional distress.

125. In engaging in the course of conduct alleged in this cause of action, Chase acted in concert with, conspired with, and was aided and abetted by each other defendant, all to further their own interests at the expense of the plaintiff's interests.

126. As a proximate result of the acts and omissions of Chase, the plaintiff has

sustained damages in an amount within the jurisdiction of the court and is entitled to reasonable attorney fees from Chase under the Note.

127. As a further proximate result of the acts and omissions of Chase, the plaintiff has suffered and will continue to suffer in the future anxiety, worry, mental, and emotional distress, all to his damage in an amount that has not yet been ascertained.

128. The acts and omissions of Chase, were done with oppression, fraud, and malice as defined by section 3294 of the California Civil Code and the plaintiff is entitled to exemplary and punitive damages in an amount appropriate for the sake of example and for punishing Chase.

WHEREFORE, the plaintiff prays for judgment against each defendant as follows:

1. For general damages in an amount within the jurisdiction of this court;
2. For special and consequential damages according to proof;
3. For exemplary and punitive damages according to proof;
4. For reasonable attorney's' fees and costs according to proof;
5. For rescission of the Resolution Agreement;
6. For prejudgment interest; and
7. For such other and further relief as the court may deem just and proper.

DATED: June 22, 2005

John Clifton Elstead
THE ELSTEAD LAW FIRM
Attorneys for Plaintiff

**VERIFICATION**

I am the plaintiff in this action. I have read the foregoing FIRST AMENDED COMPLAINT and know its contents. The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true and correct.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: June 22, 2005

JOHN CLIFTON ELSTEAD

complaint first amended

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is **ADORNO YOSS ALVARADO & SMITH, 1 MacArthur Place, Suite 200, Santa Ana, CA 92707**.

On March 20, 2008, I served the foregoing document described as **PLAINTIFF'S STATEMENT OF FURTHER INFORMATION REGARDING (1) STATUS OF STATE APPEALS AND (2) IDENTIFICATION OF CLAIMS** on the interested parties in this action.

☒ by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:
**SEE ATTACHED SERVICE LIST**

☒ **BY REGULAR MAIL:** I deposited such envelope in the mail at 1 MacArthur Place, Santa Ana, California. The envelope was mailed with postage thereon fully prepaid.
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**BY THE ACT OF FILING OR SERVICE, THAT THE DOCUMENT WAS PRODUCED ON PAPER PURCHASED AS RECYCLED**

☐ **BY FACSIMILE MACHINE:** I Tele-Faxed a copy of the original document to the above facsimile numbers.

☐ **BY OVERNIGHT MAIL:** I deposited such documents at the Overnite Express or Federal Express Drop Box located at 1 MacArthur Place, Santa Ana, California 92707. The envelope was deposited with delivery fees thereon fully prepaid.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on March 20, 2008, at Santa Ana, California.

/s/ Veronica Delgado

Veronica Delgado

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

**SERVICE LIST**
**Wachovia v. Elstead, et al.**
**USDC, Case No. 07-CV-06015SI**

Scott N. Schools, Esq.
Thomas M. Newman, Esq.
9th Floor Federal Building
450 Golden Gate Ave., Box 36055
San Francisco, CA 94102

(415) 436-6805-telephone
(415) 436-6748-facsimile

**Attorneys for Defendant, The United States of America**

John Clifton Elstead
7460 Woodrow Drive
Oakland, CA 94611

(510) 339-3245-telephone

**Defendant in Pro Per**

Michael J. Fox, Esq.
Christopher E. Deal, Esq.
17911 Von Karman Avenue, Suite 300
Irvine, CA 92614-6253

(949) 622-4303-telephone
(949) 622-5756-facsimile

**Attorneys for Defendant, Fidelity National Title Insurance Company**

John A. Russo, Esq.
Randolph W. Hall, Esq.
Jannie L. Wong, Esq.
One Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94612

(510) 238-6513-telephone
(510) 238-6500-facsimile
jlwong@oaklandcityattorney.org

**Attorneys for Defendant, City of Oakland**